## Appeal of the Borough of Easton *et al.*

*Title to land appropriated by corporation, does not vest until compensation is paid or secured, but may be mortgaged by the company subject to lien of purchase-money.*— *Costs on distribution of proceeds of sheriffs' sales.*

1. Title to land entered upon, against the consent of the owner, by a water company, under their act of incorporation, for the purpose of constructing a reservoir, does not pass to the company until compensation is made or adequate security given therefor.

2. Where a landowner refused the bond tendered by the company, and proceedings to assess damages were instituted, from the award in which the plaintiff appealed, no title to the land passed, until by agreement judgment was entered for the amount of the damages agreed upon: and the judgment as for purchase-money was held entitled to be first paid out of the proceeds of the lot.

[Appeal of the Borough of Easton *et al.*]

3. A mortgage by a corporation of their property, franchises, and effects, given after their entry upon lands, and before judgment for damages, will bind their equitable interest therein, subject to the payment of the judgment for purchase-money: *Held*, therefore, on distribution of the proceeds of the sheriff's sale of the land, that the balance in court after the judgment passed to a prior mortgage in preference to one executed after the entry of the judgment, and the vesting of the legal title in the company.

4. Whether a party to the distribution of money in court, may be allowed costs for witnesses, *subpœnas*, &c., is a matter for the discretion of the court under the circumstances: as against an undisputed lien, no such costs will be allowed: but as against a contesting claim, the successful party is entitled to costs out of that part of the fund contended for.

APPEAL from the Common Pleas of *Northampton county*.

This was an appeal by the Corporation of the Borough of Easton, McEvers Forman, Thomas Deshler, and ten others, from the decree of the court below, distributing the proceeds of the sheriff's sale of the property, franchises, and effects of the West Ward Water Company of Easton.

The facts of this case are so fully set forth in the opinion of the learned judge of the Common Pleas, that no other statement is necessary. The commissioners who were appointed to distribute the fund in court made an elaborate report, against the confirmation of which exceptions were filed for the corporation of Easton, and other lien-creditors.

The court below (MAYNARD, P. J.) sustained the report in part, and reversed it in the distribution of a portion of the fund, for the reasons contained in the following opinion:—

"By an Act of Assembly, approved the 4th day of May 1854, the West Ward Water Company was incorporated. The object of the incorporation was 'for the purpose of introducing into that portion of the borough of Easton lying west of a newly laid out street called Sitgreaves street, and into such portions of Forks township as are adjacent, a supply of pure water for the use of the inhabitants of the same.'

"The 7th section of the Act provides: 'That it shall be the duty of the president and managers, as soon as may be, after the company shall so organize for the purpose of introducing water into said West Ward, to purchase and hold in fee simple, or for any less estate, any spring or springs, stream or streams of water, or any water power or powers near or convenient to said West Ward, or any lands, tenements, or hereditaments to which any spring or springs, stream or streams may be appurtenant, with full power, the same or any part thereof in the whole of their works, to grant, bargain, sell, alien, convey, mortgage, pledge, charge, encumber, and devise and dispose of at their will and pleasure, and shall convey said water into the said West Ward and Forks township by means of pipes, trunks, aqueducts, or in such manner as they shall deem most advisable or conve-

nient, and should they find it necessary to provide proper cisterns, or reservoirs, for the reception thereof, and for these purposes may enter into such land and enclosure as may be necessary, and to dig, ditch, and lay pipe through the same, the company doing as little damage as possible to private property.'

"Section 10th of said Act provides: 'That in case the owner or owners of any land, through or upon which such ditch, pipes, trunks, aqueducts, reservoirs, and cisterns are laid and constructed, or the owner or owners of land upon which it may be found necessary to enter for the purpose of digging, taking, and carrying away clay, gravel, or other material necessary for the purposes aforesaid, or the owner or owners of any spring or springs, stream or streams of water, which may be used and appropriated by the company or any person who may be injured, &c., can not agree with said company upon the damages or compensation to be paid to the said owner or owners, person or persons, it shall and may be lawful for the parties to appoint, or if the parties cannot agree, then, on application the party or person complaining, for the Court of Common Pleas of Northampton county to appoint three disinterested and suitable persons to ascertain and report to said court on oath or affirmation, what damages, if any, have or will be done by the said company, which report having been returned and confirmed by the court, judgment shall be thereon entered and execution be issued therefor with costs as in other cases: *Provided*, That either party may appeal from the report or award to the court within twenty days after the same shall have been reported in open court, in the same manner that appeals are allowed from the award of arbitrators.'

"The West Ward Water Company was organized in pursuance of this Act of Assembly, erected their works and introduced water into said West Ward of the borough of Easton and vicinity, as authorized by said act, for the purpose of constructing a suitable reservoir to supply water at all times to the inhabitants; the said company entered upon, took, and appropriated to their exclusive use, a certain lot of ground containing five acres and one hundred and fifteen perches, and on which the company constructed their reservoir. This lot of ground was the property of John Herster, and was taken by the company in the following manner: On the 31st January 1856, the company presented their petition to the Court of Common Pleas of Northampton county setting forth their Act of incorporation, 'and that in selecting a place for their reservoir find it necessary to occupy this lot of ground. That they have been unable to obtain a title for the same, or agree upon the amount of damages to be paid for the appropriation thereof,' and praying the court to appoint viewers to ascertain the damages, &c., in pursuance of the provisions of

11 Wr.—17

[Appeal of the Borough of Easton *et al.*]

the 10th section of said Act. Viewers were appointed by the court, but before the viewers could meet to discharge the duties of their appointment, John Herster the owner died, having by his will devised this lot of ground to William Butz. On the 21st day of April 1856, the said water company presented a second petition to the court setting forth the facts recited in the first petition, and the death of the said John Herster, and that the title to the said lot of land had by his will become vested in William Butz; that the company was unable to agree with the said Butz for the price of the land or damages. That they have found it necessary to commence the construction of their reservoir, and on the 14th of March 1856 had tendered to the said William Butz a bond with adequate security in the penal sum of $3000, conditioned for the payment of damages, &c., for taking the said lot of land, which bond the said William Butz refused to receive. The court appointed viewers in accordance with the provisions of the said Act, who on the 26th April 1856 made their report to the court, which was filed on the same day, in which they assessed the damages sustained by William Butz as $1526.25. From this report of damages Mr. Butz appealed on the 8th of May 1856. The case was then pending in court until May 4th 1860, when by agreement of the parties the damages for taking the lot were fixed at the sum of $2141.51, for which sum the company gave judgment with stay of execution until plaintiff filed a deed for the property. Prior to March 1860, the West Ward Water Company were indebted to insolvency, and in order to enable the company to secure and pay their creditors, to the extent of their ability, including all their estate, real, personal, and mixed, and also their franchises, the legislature by an Act, approved the 20th day of March 1860 (see Pamph. Law 226), authorized 'The West Ward Water Company to execute a mortgage or mortgages of all their estate, real, personal, and mixed, and of all their chartered and corporated franchises, rights and privileges, to those persons, who, as endorsers, sureties, or guarantors for said West Ward Water Company, have paid or are liable to pay the *bonâ fide* indebtedness of said company, and the directors shall have power to ascertain and designate the said mortgages, &c., and the amount for which they shall be given.'

"The second section provides that, 'at any judicial sale which shall be had under said mortgage, all the aforesaid estate, franchises, rights and privileges, described and set forth in said mortgage, shall pass to and vest in the purchaser or purchasers at such sale, in the same manner and with the same effect, as the same were held and enjoyed theretofore by the said mortgagors.' Section 4 provides, 'at any such sale made as aforesaid, the said corporate estates, rights, privileges, and franchises shall be sold clear of all encumbrances, and the purchase-money shall be

applied to the liens in order of priority according to law, and under the direction of the court if required by the parties interested.

" By the 3d section of said Act the purchasers are authorized to organize a new company, under the name of 'The Lehigh Water Company.'

" By virtue of the authority, and in pursuance of the provisions, of this last-recited Act of Assembly, the West Ward Water Company, on the 11th day of May 1860, executed a mortgage to Thomas Deshler and others therein named, of 'all their waterworks, all their lands and tenements, and buildings; all their dams, cisterns, basins, and reservoirs; all their springs and streams of water; all their easements, rights of way, and privileges in and upon the real estate of other persons; all their aqueducts, water-pipes, ditches, pumps, conduits, trunks, enginehouse, steam-engine, machinery, fire-plugs, stop-cocks, and appurtenances, and all their corporate rights, franchises, powers, privileges, and immunities.' The consideration of this mortgage was to secure a debt of $6554.50, which the mortgagees had paid and incurred for the company, as 'endorsers, sureties, or guarantors.'

" A *scire facias* was issued upon this mortgage to August Term 1860, and judgment obtained on the same, 31st July 1860, for the sum of $6641.94, on which a *levari facias* was issued, and on the 27th day of August 1860, the sheriff sold all the property included in the mortgage, in the aggregate for the gross sum of $40,030, which, after deducting the sheriff's costs on the sale, left for distribution the sum of $39,755.07.

" The estate, mortgaged premises, property, rights and privileges, and franchises of the company, are described in the levy as consisting of seven separate parcels numbering from one to seven inclusive. The parcels 1, 2, 3, 4, are separate lots of land with the improvements on the same described. No. 5 consists of a quantity of iron pipe now laid and certain fixings to the same described.

" No. 6 consists of a quantity of cast-iron pipe now laid in certain streets and other localities in the borough of Easton, and No. 7 consists of the dams, cisterns, basins, reservoirs, springs, streams of water, all the easements, rights of way, &c., upon the real estate of other persons, and with all the appurtenances of the works of the company, and all their corporate rights, franchises, privileges, and immunities.

" The liens against the property and now on the fund, the proceeds of sale are as follows: 1st, a mortgage given by the West Ward Water Company to the president and managers of the Easton Delaware Bridge Company, on lots No. 2, 4, and 6 (before referred to), dated June 18th 1856. The amount due on

this mortgage at the date of the sheriff's sale was $8813.33. It being the oldest lien, and the amount undisputed, was paid by the sheriff to the parties entitled. The balance of the proceeds $30,936.74, was paid into court by the sheriff, in obedience to a rule on him for that purpose.

"The 2d lien is a mortgage given by the West Ward Water Company to the Easton Water Company, dated June 18th 1856, and upon the same property as that described in the first mortgage above named. This mortgage was given to secure the sum of $15,000.

"The 3d lien is a mortgage given by the West Ward Water Company to the corporation of the borough of Easton, in the sum of $20,000, dated November 25th 1857. This mortgage was given on all the goods, chattels, franchises, and effects of the company, and also all that tract of land on the Nazareth road on which the reservoir is now being constructed.

"This lot of land is described in the sheriff's levy as lot No. 3, and known in this case as the Butz lot.

"The mortgage to the Easton Water Company does not include this lot No. 3, consequently is no lien on that part of the fund raised from the sheriff's sale of that lot, which was ascertained by the commissioners appointed by the court to report the facts and make distribution, to have been $2857. The mortgage to the borough of Easton does include the Butz lot, but was executed before the West Ward Water Company had acquired title to the Butz lot, but they had without consent entered into possession of the lot prior to the date of this mortgage, and had commenced the construction of the reservoir thereon, and on the 14th of March 1856, tendered a bond to Mr. Butz in the sum of $3000, with two sureties. Mr. Butz, as before stated, refused to receive this bond, and the commissioners to report the facts, have found that the bond thus tendered to Mr. Butz for the lot was not adequate security therefor. It was agreed between the second and third mortgage creditors that the amount of the fund to which they should be found entitled, should be divided between them in the proportion of 54.9 per cent. of the borough of Easton, and 45.1 per cent. to the mortgage in favour of the Easton Water Company. The only remaining lien-creditors who claim a share in the distribution of the proceeds of the sale or fund in court, are Mr. Butz, on account of his title to lot No. 3, and his judgment for the same entered May 4th 1860, for $2141.51, and the Deshler mortgage under which the entire property and franchises were sold, dated 11th May 1860, in the sum of $6554.55.

"The question is, which of the liens are entitled to that portion of the fund in court raised from the sale of lot No. 3 (the Butz lot), which the commissioners found to be $2857. In the distribu-

tion they appropriated the sum of $2201.42 to the debt, interest, and costs of the Butz judgment, and the balance $445.79 to the mortgage of Thomas Deshler and others.

" To the distribution thus made by the commissioners, exceptions were filed in behalf of the borough of Easton. 1st, in awarding any portion of the fund to the Butz judgment; 2d, in awarding any portion of the fund to the mortgage of Thomas Deshler *et al.*; 3d, in not distributing the same to the borough of Easton mortgage and the Easton Water Company mortgage, to be divided between them according to the *pro rata* agreed upon between said mortgage-creditors; and 4th, in not allowing the bill of costs for witnesses, &c., attending before the commissioners in behalf of the borough of Easton.

" Exceptions were also filed to the report of the commissioners in behalf of those claiming under the bond and mortgage to the Easton Water Company. Those exceptions are the same in substance as the first and third exceptions filed in behalf of the Borough of Easton.

" The Act of Assembly, as we have seen, in pursuance of which the mortgage was given, and under which the sale of the property and franchises was made, provides, 'the corporate estate, rights, privileges, and franchises shall be sold clear of all encumbrances, and the purchase-money shall be applied to the lien in order of priority according to law and under the direction of the court.

" The first question then to be determined is, whether the Butz lot (No. 3) was part of 'the corporate estate, rights, privileges, and franchises of the West Ward Water Company at the date of the mortgage, the 11th May 1860 ?'

" If this question can be answered in the affirmative the case will be free from difficulty, as the Act declares the 'estate, rights,' &c., shall be sold clear of all encumbrances, and the money applied to the lien in order of priority. What was the estate, right, privilege, and franchise of the West Ward Water Company to this Butz lot No. 3 ?

" In order to answer this question, we must look to the Acts of Assembly defining the rights and duties of the company, and the records of the courts framed in pursuance of those rights and duties.

" By the Act of incorporation of the West Ward Water Company was authorized to introduce into that portion of the borough of Easton and adjacent portions of Forks township, 'a supply of pure water for the use of the inhabitants of the same, and for that purpose it was the duty of the company to purchase and hold in fee simple, or for any less estate, springs, streams of water, water-powers, or any land, tenements, or hereditaments to which springs, streams, or water-power might be appurtenant,

and convey the water into said West Ward,' &c., in such manner as they shall deem most advisable and convenient, 'and should they find it necessary, to provide for proper cisterns or reservoirs for the reception thereof.' All statutes in which the public are interested, and particularly those which relate to public health and convenience, should receive a liberal construction.

"It was by authority of the provision of the statute above recited, that the West Ward Water Company entered upon and took possession of the William Butz lot, and constructed the reservoir thereon.

"We think this statute gave the company the right, in subordination to the 4th section of the 7th article of the Constitution, to take this lot owned by Mr. Butz, if the company found it necessary to do so, in order to carry out the purpose for which they were incorporated. This section of the Constitution provides, that 'the legislature shall not invest any corporate body or individual with the privilege of taking private property for public use, without requiring such corporation or individual to make compensation to the owner of said property, or give adequate security therefor before such property shall be taken. But our Supreme Court have decided, that in such cases it is not necessary that the compensation to the owners shall be actually ascertained and paid before the property is appropriated; but that it is sufficient if an adequate remedy is provided by which he can obtain compensation without unreasonable delay: Yost's Report, 5 Harris 524; Borough of Harrisburg *v.* Crangle, 3 W. & S. 460; also 10 Barr 97, 1 Barr 132, 218, 6 W. & S. 113. This 4th section of the 7th article, and also the latter clause of the 10th section of the Constitution, it will be observed are disabling provisions. See Harvey *v.* Thomas, 10 Watts 66. There are no other limitations to the power of the state over private property than those that are placed upon it by the Constitution: Monongahela Navigation Company *v.* Coons, 6 W. & S. 113, 114. The injunction of the Constitution on the power of the legislature is, that they shall not give a corporation the privilege of taking 'private property for public use without compensation or adequate security. This injunction being removed by compensation or security, the right of eminent domain may be fully exercised by the legislative power. The question then recurs, whether the West Ward Water Company have complied with the provisions of law in taking this lot of land from Mr. Butz; and, if so, when did the company take it, within the meaning of the Constitution and the law as settled by the decisions of our Supreme Court.

"The company entered into the lot without right, having neither made compensation nor given adequate security therefor. They next tendered a bond; the security was inadequate, and it

was not accepted by Mr. Butz. Viewers were appointed, who reported the damage at $1500. Mr. Butz was dissatisfied, and appealed from their decision to the court. The cause was then pending in court without compensation and without adequate security until the 4th of May 1860, when the parties 'agreed upon the damages or compensation to be paid to the owner (Mr. Butz) as provided in the 10th section of the Act of 4th May 1854, at which time the company gave, and Mr. Butz received, the judgment, $2141.51, as adequate security for the damages or compensation' for the lot of land. The damages having then been agreed upon, and security by the lien of the judgment, the title to the lot vested in the company by operation of law. The statute of incorporation was potent to vest the title the moment the constitutional impediment was removed, by virtue of the right and power of eminent domain, which is defined by Chancellor Kent to be 'the inherent sovereign power of a state, which gives to the legislature the control of private property for public uses :' 2 Kent's Com. 339 n. Our land titles are derived from the state, and are granted subject to the right of eminent domain. This vesting of the title of private property in the company for public purposes by operation of law, constitutes the 'taking and appropriating within the meaning of the constitution.' This judgment in favour of Mr. Butz, as we have seen, was not compensation, but only security for the damages. And the lien, both at law and in equity, attached the moment the title vested. This lien constitutes the adequacy of the security on which the title vested in the company. The lien of this judgment has priority over all the other liens as against the Butz lot. First in equity, because given to secure the consideration-money for the lot. In law, because prior in date to any other encumbrance on the legal title of Mr. Butz, and the 10th section of the Act of incorporation authorizes a judgment to be entered for the 'damages or compensation' in such cases, and that execution be issued therefor as in other cases.'

" It is true that the Easton Water Company mortgage is older, but it does not include the Butz lot. The borough of Easton mortgage is prior in date and included this lot, but at the time it was executed the West Ward Water Company had not acquired title to the Butz lot. It is argued that as the West Ward Water Company afterward acquired the title to this lot, such title when acquired enured to the benefit of the mortgage of the borough of Easton.

" This proposition would be true if the company had paid Mr. Butz for the lot when it was taken. But instead of paying, the company only secured the consideration by the lien of this judgment; therefore, the title of this lot vested in the company when taken subject to the lien of this judgment which gives it priority.

"It has also been argued that this judgment is not a lien against the land or estate of the company, because the lands of a corporation which are necessary for the enjoyment of the franchise, are not liable to seizure and sale upon execution. But it does not follow because the real estate of a corporation is not liable to seizure and sale on execution, that therefore a judgment against such corporation is not a lien upon this real estate. The 1st section of the Act of 26th March 1827, Dun. Digest 572, pl. 5, declares, that 'all judgments entered in any court of record in this Commonwealth, or revived in the manner prescribed by this Act or the Act to which this is a supplement, shall continue the lien on the real estate of the defendant for the term of five years from the day of entry or revival thereof.'

"In the case of Auwerter *v.* Mathiot, 9 S. & R. 402, the late Chief Justice Tilghman states it as a rule resulting from a connected series of decisions, that 'by the law of Pennsylvania all the real estate of the debtor, whether legal or equitable, is bound by a judgment against him.'

"It is true that the lands of a corporation which are necessary for the enjoyment of their franchises, cannot be taken and sold upon execution. The remedy is by sequestration, as provided by the Act of 16th June 1836, as was decided in Susquehanna Coal Company *v.* Bonham, 9 W. & S. 27. But the remedy by sequestration is inapplicable here, because the property was sold by authority of law, the Act of 20th March 1860, and the proceeds are in court for distribution as provided in that Act. These principles, applied to the facts in this case, award from the proceeds of the sale of the Butz lot the payment of his judgment and costs, which lien secured the consideration for which this lot was taken by the company.

"The next question to be disposed of is, which lien is entitled to the balance of the proceeds arising from the sale of the Butz lot after deducting the amount of his judgment and costs?

"The commissioners awarded this balance to and in payment of the mortgage of Thomas Deshler *et al.*, dated May 11th 1860, and on the ground 'that the West Ward Water Company had not acquired title to this Butz lot at the date of the execution of the mortgage from the company to the borough of Easton,' which was executed on the 25th November 1857, and included this Butz lot with other property of the company. It will be recollected that the West Ward Water Company took possession of this Butz lot prior to March 1856, and then commenced the construction of the reservoir thereon, and that they continued in the possession up to the day of the sheriff's sale, August 27th 1860. During the time they so held the possession, a large sum had been expended in the construction of the reservoir, which was then unfinished. As we have seen, the company had the

right to take this lot under their charter upon the condition of making compensation or giving adequate security therefor. Could the company mortgage or pledge this 'right to take private property, or, in other words, their right to take the Butz lot?'

"The 3d section of the Act of 5th of May 1855, provided that it shall be lawful for the West Ward Water Company 'to borrow any sum of money not exceeding $20,000, and to secure the payment of the sum in the same manner as is provided in the 13th section of the Act to which this is a supplement: Pamphlet Laws of 1855, 449.

"The section of the Act referred to enacts, that the said company shall have power to borrow money to be applied to the prosecution or improvement of their works, 'and to pledge their goods or chattels, property, franchises, and effects by mortgage or otherwise for security and repayment of the sum.' Under the provisions of these Acts of Assembly, the mortgage to the borough of Easton was executed to secure the sum of $20,000, 'on all the goods, chattels, franchises, effects of the West Ward Water company whatsoever and whensoever (describing some of the property more particularly), and also all that tract of land on the Nazareth road on which the reservoir is now being constructed (the Butz lot).

"It is evident from these statutes that the company had authority in law to mortgage their property both real or personal, and also all their corporate rights and franchises, for the repayment of the moneys borrowed to construct their works. This mortgage was, therefore, a lien upon all the right, title, and interest which the West Ward Water Company had acquired to this lot of land prior to the date of the mortgage, and is analogous to a lien entered against the equitable title acquired by a vendee of land under articles of agreement. In Waters's Appeal, 11 Casey 523, Justice Woodward, in delivering the opinion of the court, says: 'It has been many times said and decided in Pennsylvania, that a judgment against the equitable estate, which a vendee holds under articles of agreement for the sale and purchase of land, attaches to and binds the legal estate the instant that it vests in the vendee:' Richter *v.* Selin, 8 S. & R. 425; Lynch *v.* Dearth, 2 Penn. Rep. 110; Episcopal Academy *v.* Friezr, 2 Watts 16; Foster's Appeal, 3 Barr 80; Lyon *v.* McGuffey, 4 Id. 128. 'In all such cases effect is given to the judgment-lien, without revival against a subsequently-acquired interest of the debtor. This class of cases form exceptions to the general principle, that limit liens to such estate as the debtor held at the date of their entry.

"A mortgage is in form a conveyance by deed, and although it is only a security for money, yet it vests the title to the estate

[Appeal of the Borough of Easton *et al.*]

to be held upon condition and as a means of enforcing payment; and for that purpose ejectment may be sustained on it, and after-acquired title by the mortgagor will enure to the benefit of the mortgagee to increase and perfect his lien, upon the same princi-ple that after-acquired title by a grantor who had an imperfect or no title at the time of his grant, will enure to the benefit of his grantee. This principle was decided in Brown *v.* McCormick, 6 Watts 60. Justice Rogers says it is a principle too well settled to admit of dispute. When a person conveys land in which he has no interest at the time, but afterwards acquires a title to the same land, he will not be permitted to claim in opposition to his deed from the grantor, or any person claiming title from the grantee. The operation of the principle is, that immediately on the execution 'of the deed (by which the grantee obtained title) it enures to the benefit of the grantee of the land by virtue of the previous deed.' The same principle was decided in Jackson *v.* Ball, 1 Johns. Cases 90. Also Jackson *v.* Murray, 12 Johns. Rep. 201, that 'if a man makes a lease of land by indenture which is not his, or levies a fine of an estate not vested, and he afterward purchases the land, he shall notwithstanding be bound by his deed.' Also Jackson *v.* Stevens, 13 Johns. Rep. 316, the Court say, 'the title subsequently acquired will enure to the benefit of his grantee, and the confirmation of his title.'

"We feel constrained by these principles to hold that the right of the company to take this lot, and whatever equitable interest the company had acquired in it, by the expenditure of money in improvements previously to the date of the mortgage to the borough of Easton, were bound by the lien of that mort-gage, and that this mortgage-lien attached to and bound the legal title to the lot the instant the title vested in the West Ward Water Company, the mortgagor, subject however to the prior lien of the Butz judgment. It follows, therefore, that the mortgage to the borough of Easton has priority over the mortgage to Thomas Deshler *et al.*, and as against the Deshler *et al.* mort-gage is entitled to the balance of the fund raised from the sale of the Butz lot in distribution. The only remaining question is whether the borough of Easton should be allowed from the fund in court her 'bill of costs for witnesses, *subpœnas*,' &c., incurred on the hearing before the commissioners.

"This is a question which rests mainly in the discretion of the court in cases of this class and in awarding costs. Courts take into consideration the circumstances of the particular case before them, or the situation or conduct of the parties, and exercise their discretion in reference to those points: Brightly 548–9. We think it would not be equitable to take these costs from the fund in the first instance, as there were no questions of fact, in reference to the first lien, which required witnesses to establish

or controvert. This remark applies to all the liens prior to the Butz judgment. In contesting the validity and priority of this judgment, the exception failed, and is, therefore, not entitled to costs as against that lien-creditor. But the borough of Easton has been successful in the contest as against the Deshler *et al.* mortgage, and is meritorious in establishing her title to so much of the fund as has been awarded to her; and as she holds 45.1 per cent. of the sum awarded to her in trust for the Easton Water Company mortgage under the agreement of record between the counsel representing those mortgage-creditors, and as the Easton Water Company could have had no claim on or to this part of the fund except through the lien of the mortgage to the borough of Easton, it is equitable between these creditors that the taxable costs in this case (after deducting the Butz judgment) should be paid and deducted from the balance of the funds arising from the sale of Lot No. 3, before dividing the remainder of that balance according to the *pro rata* agreed upon between them. The report of the commissioners is correct, except so far as relates to the sum of $455.79 awarded by them to the mortgage of Thomas Deshler and others, which is error and is set aside, and the fund in court is distributed according to the following decree :—

"And now, to wit, February 3d 1863, this cause came on to be heard at an adjourned term of this court, and was argued by counsel, and, therefore, upon due consideration thereof, it is ordered, adjudged, and decreed as follows, of the fund in court for distribution at the date of the filing of the commissioners' report, to wit, 29th of August 1862, namely, the sum of $33018.15 is distributed as follows, to wit :—

| | | |
|---|---|---:|
| "To prothonotary's commissions, | . . | $156.18 |
| "Borough of Easton, per agreement, | . | 16374.52 |
| "Assignees of Easton Water Company, | . | 13443.08 |
| | | $29973.78 |

| | | |
|---|---|---:|
| "Balance yet to be distributed, | . . | 3044.37 |
| "Deduct costs and expenses of audit. | | |
| "Wm. Mutchler, prothonotary, pd. . | . | 4.25 |
| "H. F. Steckel, late prothonotary, . | . | 3.66 |
| "Advertising, . . . . | . | 5.00 |
| "Court-house, M. West, 5 days, | . | 5.00 |
| "      "      John Maxwell, 5 days, | . | 10.00 |
| "W. Mutchler, recording report, | . . | 8.00 |
| "Auditors, each $100, . . | . | 300.00 |
| "Drawing report, . . . | . | 50.00 |
| | | 385.91 |
| | | 2658.46 |

[Appeal of the Borough of Easton *et al.*]

| | | | | | | |
|---|---|---|---|---|---|---|
| " To David Heller, collector, | . | . | . | 1.25 | |
| " Wm. Butz judgment, | . | . | . | . | 2141.51 | |
| " Interest to 27th August 1860, | | . | . | 40.33 | |
| " Costs, | . | . | . | . | . | 19.58 |
| | | | | | | 2202.6·; |
| | | | | | | |
| | | | | | | 455.7· |
| " Borough of Easton bill of costs on audit, | | | | | 77.45 |
| | | | | | | |
| | | | | | | $388.34 |

" This balance is awarded to the borough of Easton mortgage, and is to be divided with the Easton Water Company mortgage assignees according to the *pro rata* agreed upon."

This appeal was then entered by the appellants, for whom the following error was assigned :—

The court erred in distributing and awarding out of the fund in court the sum of $2201.42 to William Butz, in payment of his judgment, interest, and costs, and in not distributing that sum to the corporation of the borough of Easton, and to those claiming under the mortgage of the Easton Water Company, in the proportion of 54.9 per cent., to wit, $1208.58, to the former, and 45.1 per cent., to wit, $992.84, to the latter.

*H. D. Maxwell*, for appellants.

*A. E. Brown* and *Edward J. Fox*, for Butz, appellee.

PER CURIAM.—After an attentive consideration of all that was so ably urged on behalf of the appellants, we affirm the decree for the reasons given for it by the learned judge below.

Decree affirmed.

AGNEW, J., was absent at Nisi Prius when this case was argued