**In re Morton Leon NEAL, Debtor.**

**Bankruptcy No. 2–80–02063.**

United States Bankruptcy Court,
S. D. Ohio,
Eastern Division.

March 3, 1981.

Milton A. Puckett, Columbus, Ohio, for Ford Motor Credit Company.

Samuel L. Calig, Esq. Columbus, Ohio, for Debtor.

Frank Pees, Worthington, Ohio, Trustee.

## ORDER ON OBJECTION TO CONFIRMATION

R. J. SIDMAN, Bankruptcy Judge.

This matter is before the Court on the objection to confirmation, filed by Ford Motor Credit Company, to the Chapter 13 plan proposed by Morton Neal. The Chapter 13 plan calls for payment of $142.00 bi-weekly to the Chapter 13 trustee for a period of fifty-eight (58) months and a payment of a 100% dividend to all creditors provided for by the plan. One of the creditors, Ford Motor Credit Company, is owed the sum of $14,066.47 and holds as security for the obligation a second mortgage on the residential real estate of Neal. Ford Motor Credit Company has invoked the provisions of § 1322(b)(2) of the Bankruptcy Code in its opposition to confirmation of the plan. That section provides:

"(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;" 11 U.S.C. § 1322(b)(2).

Ford Motor Credit Company ("FMCC") asserts that it is a holder of a claim secured only by a security interest in real property that is debtor's principal residence, and thus, under the provisions of the cited section, may not have its rights modified by a Chapter 13 plan.

The original terms of Neal's obligation to FMCC called for payments over a seven-year period commencing May of 1980. The payment was set at $290.00 per month. The obligation thus extends, by its terms, beyond the length of the proposed plan (scheduled at fifty-eight (58) months). However, the plan seeks to compress the term of the obligation to fifty-eight months through an alteration of the contractual interest rate of 18% per annum to a discount rate of 8% per annum, simple interest. See, 11 U.S.C. §§ 1322(b)(2) and 1325(a)(5). The full principal amount of the obligation to FMCC (as it existed on the date of the petition) is proposed to be paid under the debtor's plan. It is only the contractual interest rate which is proposed to be altered.

The debtor contends that the terms of his proposed plan do not modify the rights of FMCC as that term is used in § 1322(b)(2) of the Bankruptcy Code and that the terms of the plan do not violate either the spirit or letter of § 1325(a)(5) of the Bankruptcy Code, a provision which mandates a certain treatment for holders of secured claims. The debtor further alleges that in fact the real estate mortgage held by FMCC might not be fully secured in the residential real estate in light of the present value of the real estate and the balance owed on the first mortgage by the debtor, and that FMCC is not able to insist on full compliance with the terms of its pre-petition contract.

The legislative history on the enactment of this particular provision of the Bankruptcy Code [§ 1322(b)(2)] is sparse. Without explanation, the clause relating to the inability of a Chapter 13 debtor to modify the rights of the holder of a claim secured *only* by a security interest in residential real estate was inserted during the process of legislative debate and compromise over the final version of the legislation. The insertion of this clause was, in the Court's opinion, premised in part on the assumption, not always valid, that a claim secured in real property was fully secured and thus deserved full payment at the agreed upon contract rate. There apparently was a fear on the part of the drafters of the legislation, perhaps imparted by that portion of the creditor community dealing with mortgages on residential real estate, of a wholesale revision of the repayment terms of home mortgages to the substantial financial detriment of the lending institutions. At least one court has presumed this to be the purpose of the clause. See, *United Compa-*

*nies Financial Corporation v. Brantley,* 6 B.R. 178, 179 at 189 (N.D.Fla.1980). No clue is given as to why this added protection was merited by a lender who may have only taken real estate as security, as opposed to a lender who may have required additional security in the form of stock, accounts receivable, motor vehicles, or other personal property.

While the fear of mortgage loan revision was not necessarily unfounded, the practical application of the statutory language presents a problem. In the present case, for instance, the debtor proposes to repay a second mortgage by compressing its term from approximately seven years to five years and by altering the contractual rate of interest from 18% per annum to a rate which would presumably satisfy the requirements of § 1325(a)(5)(B)(ii) of the Bankruptcy Code by paying the value, as of the effective date of the plan, of property to be distributed under the plan on account of the second mortgage claim. This would involve the calculation of a discount factor to be added to the gross principal amount owed on the second mortgage at the time of the filing of the petition. This factor has been determined in this case to be 8% simple interest. The position of FMCC is apparently not that this discount factor is not fair or sufficient to satisfy the § 1325(a)(5)(B)(ii) standard. This is an entirely separate issue which has produced judicial decisions of its own [see, for example, *GMAC v. Hyden (In re Hyden),* 10 B.R. 21, 6 B.C.D. 1392 (S.D.Ohio 1980); *In re Anderson,* 6 B.R. 601, 6 B.C.D. 1155 (S.D.Ohio 1980); *In re Ziegler,* 6 B.R. 3, 6 B.C.D. 194 (S.D.Ohio 1980); and *In the Matter of Crockett,* 3 B.R. 365, 6 B.C.D. 226 (N.D.Ill.1980)]. The Court has not been asked to rule upon this issue. The position of FMCC relates solely to whether any change in the terms of repayment of its obligation, as those terms are embodied in the pre-petition contract between FMCC and the debtor, is barred by the provisions of § 1322(b)(2) of the Bankruptcy Code.

The treatment proposed to be given to the second mortgagee in this case is further complicated by the fact that a portion of the claim of the second mortgagee is, in fact, unsecured. It is not consistent with the statutory scheme of Chapter 13, and the Bankruptcy Code's bifurcated treatment of a secured and unsecured claims, for instance, to assume that a junior mortgagee on real property which is already overburdened by senior mortgages, could insist on being treated as a creditor with a secured claim and insist on full payment of its claim based upon the pre-petition contractual arrangement with the debtor. It would appear that in that instance the Court would be constrained to find, pursuant to § 506(a) of the Bankruptcy Code, that the junior mortgagee was in fact the holder of an unsecured claim and thus unable to invoke the protection of § 1322(b)(2) and prevent confirmation of a Chapter 13 plan.

To a lesser degree that same problem exists in the present case. FMCC, as second mortgagee, is, at least partially, the holder of an unsecured claim. The best and only available evidence before the Court with respect to the valuation of the residential real estate of this debtor is the $25,000 valuation contained in the debtor's Chapter 13 Statement filed with the petition. Given the approximate $10,000 balance still owed on the first mortgage and an estimated cost of sale figure of ten percent of the gross selling price, it is this Court's finding that the $14,066 owed to FMCC would be at least partially unpaid if the residential real estate of this debtor were presently sold in a normal market setting. The Court hereby allows the claim of FMCC as a secured claim to the extent of $12,500 and as an unsecured claim for the balance owed. See, 11 U.S.C. § 506(a). In a forced sale setting (either a state court foreclosure or a Chapter 7 liquidation), FMCC's secured claim would most likely be substantially smaller, and its unsecured claim correspondingly substantially larger.

The questions then become (1) what is the meaning of the word "modify" as used in § 1322(b)(2) of the Bankruptcy Code and (2) what is the relationship of that statutory provision to § 1325(a)(5)(B)(i) & (ii) of the Bankruptcy Code? In a situation in which

a mortgagee is fully secured in residential real estate, the unanalyzed language of the statute would appear to prohibit any change in the terms and conditions of the contractual agreement between the debtor and the second mortgagee. This Court assumes that § 1325(a)(5)(A) would allow, however, such a mortgagee to consent to a modification of its rights notwithstanding the apparently blanket prohibition of § 1322(b)(2). Where there is, however, a portion of the claim which may be deemed unsecured (because the value of the property is inadequate to fully cover all claims secured in the real estate), the question of the definition of "modify" as used in § 1322(b)(2) takes on a different perspective.

Certainly the drafters of the Bankruptcy Code recognized that the holders of secured claims had rights superior to other creditors in a Chapter 13 proceeding only to the extent that they held liens on property of the debtor which had value. Quite clearly the provisions of § 1325(a)(5)(B), the "cram down" provisions, can be justified by the guarantee that holders of secured claims would be, in fact, paid the full value of the collateral held as security as of the date of the filing of the petition, with an appropriate discount factor for deferred payment over time. The secured creditor, at least, as envisioned by the statutory scheme of § 1325, is entitled to no more.

> "If a secured creditor is protected to the extent of the value of his collateral, there is no reason why he should be able to prevent the confirmation and consummation of a plan proposed by a debtor for the payment of his debts out of future income." Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93rd Cong., 1st Sess., Part I, 166 (1973).

In the Chapter 11 context, this concept is clearly stated and endorsed in § 1129(b)(2)-(A)(i)(II) of the Bankruptcy Code. Do the provisions of § 1322(b)(2) of the Bankruptcy Code override the recognition of this principle, and its incorporation into § 1325(a)(5)(B) of the Code, to give the mortgagee in residential real estate a greater status in a Chapter 13 setting?

A review of the evolution of the Chapter 13 provisions dealing with the rights of holders of secured claims provides some insight into congressional intent on the subject. The Commission on the Bankruptcy Laws of the United States ("Commission") (formed by Congress to study the bankruptcy laws with a view toward possible legislative revision) reported its findings and recommendations to the President, Chief Justice, and Congress on July 30, 1973. Section 6–201 of the Commission's proposed legislation, which was a part of that Report, included the following provision on the matter of secured claims:

> "[A Chapter 13 plan] ... (2) may include provisions dealing with claims secured by personal property severally, on any terms, and may provide for the curing of defaults within a reasonable time and otherwise alter or modify the rights of the holders of such claims..." Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93rd Cong., 1st Sess., Part II, 204 (1973).

The Commission Bill thus preserved the concept of Chapter XIII under the Bankruptcy Act of 1898 by excluding from the scope of coverage claims secured in real estate. There was, however, for the first time, a limited right granted to a debtor to cure a pre-petition default on a debt secured in residential real estate. This right was set forth in Section 6–201(4) of the Commission Bill.

While there were several proposals and counter-proposals relative to the treatment of secured claims between the July, 1973 Report of the Commission and H.R. 8200, which was reported favorably to the House of Representatives of the 95th Congress by the House Judiciary Committee on September 8, 1977, § 1322(b)(2) of that bill exemplifies a significantly different treatment in Chapter 13 of holders of claims secured in real estate.

> "[the plan may] ... (2) modify the rights of holders of secured claims or holders of unsecured claims..." H.R. 8200, 95th Cong., 1st Sess. § 1322(b)(2) (1977).

Quite clearly, this version of the legislation proposed to grant a broad power to Chapter 13 debtors to tailor their plans in light of their total debt structure, including real estate mortgages. This concept had also appeared in previous House versions of the proposed bankruptcy legislation.

However, a separate bankruptcy bill was being contemporaneously considered by the Senate during the 95th Congress, and under the designation of S.2266, the Senate Judiciary Committee and the Senate Finance Committee jointly reported to the full Senate a different version of proposed bankruptcy legislation. The report was made on September 7, 1978, and contained the following language in § 1322(b)(2) relative to secured claims in Chapter 13 cases:

> "[the plan may] . . . (2) modify the rights of holders of secured claims (other than claims *wholly* secured by mortgages on real property) or of holders of unsecured claims . . ." (emphasis added). S.2266, 95th Cong., 2d Sess. § 1322(b)(2) (1978).

The Senate version of the bankruptcy legislation supports the theory that congressional intent was to protect mortgage debt that was wholly (which, in its primary sense, means fully and completely) secured by the debtor's real estate. The postulation of this theory (and, due to the paucity of legislative comment, it is only that—an assumption) lends support to the thought that Congress envisioned creditors holding liens on real estate as always fully secured.

However, because of the inconsistencies existing between the two versions of the legislation, an informal conference was held among the managers of the legislation and a compromise bill was agreed upon. See, Klee, *Legislative History of the New Bankruptcy Code*, 54 Amer.Bank.L.J. 275, 290 (Summer, 1980). This resulted in the revision of § 1322(b)(2) of the Code to its final form:

> "(b) Subject to subsections (a) and (c) of this section, the plan may—
> (1) . . .
> (2) modify the rights of holders of secured claims, other than a claim secured *only* by a security interest in real

property that is the debtor's principal residence, or of holders of unsecured claims;" 11 U.S.C. § 1322(b)(2).

There was no explanation as to the rationale for the change of the word "wholly" to the word "only". There is some doubt in this Court's mind as to whether such change was intentional. Certainly the concept of "wholly" secured fits more neatly into the over-all statutory scheme. However, even if the use of the word "only" were truly intended [the court in *United Companies Financial Corporation v. Brantley,*, 6 B.R. 179 (N.D.Fla.1980), concluded that the benefit of § 1322(b)(2) was intended to apply only to lending institutions dealing solely in real estate loans (banks and savings and loan associations were given as examples), as opposed to finance companies who regularly take other forms of security, such as motor vehicles and household furnishings], consideration must be given to the remaining provisions of Chapter 13 in order to arrive at the impact of this provision on the over-all scheme of Chapter 13.

This Court believes that the various Chapter 13 provisions must be read, if possible, as internally consistent in approach and be reconciled, if possible, on a rational basis. While a conclusion can be drawn that Congress intended to treat specially the rights of a creditor secured only by an interest in residential real estate of the debtor, where a blind application of a clause or word in the statute would result in an undermining of the ability of debtors to effectively use the Chapter 13 remedy, the Court should allow the basic statutory scheme to prevail. *United States v. American Trucking Association, Inc.*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). While the meaning of the word "only" may not appear ambiguous on its face, its meaning becomes so when considered in the context of the conflicting provisions of § 1325(a)(5)(B)(ii) of the Code and the over-all remedial purpose of the Chapter 13 remedy.

Congress intended to make available the Chapter 13 remedy to a wide range of financially distressed debtors, including those debtors who may have one or more mortgages on their homes.

"Chapter 13 is designed to serve as a flexible vehicle for the repayment of part or all of the allowed claims of the debtor. Section 1322 emphasizes that purpose by fixing a minimum of mandatory plan provisions." Senate Report No. 95–989, 95th Cong., 2d Sess. 141 (1978), U.S.Code & Admin.News 1978, pp. 5787, 5927.

The statutory scheme of Chapter 13 must be fairly read to permit those debtors to effectively deal with mortgage creditors under a plan which otherwise clearly meets the confirmation standards found in § 1325 of the Bankruptcy Code. For instance, creditors desiring to avoid the judicially imposed alteration (consistent with the authority granted in § 1325 and consistent with due process requirements) of the terms of their obligations may, as a matter of course, take marginally-secured junior mortgages on residential real estate owned by debtors solely to invoke the protection of § 1322(b)(2) should the debtor file a Chapter 13 petition. In this instance, given a superficial interpretation of § 1322(b)(2), debtors would be effectively prevented from proposing a confirmable Chapter 13 plan even though reality would indicate that the junior mortgages had only marginal security (by virtue of the application of § 506(a) of the Code) in the residential real estate owned by the debtors. Thus, not only must this Court find that the protection of § 1322(b)(2) is not available to mortgagees who are junior in priority on overburdened real estate, but it must also deal with the appropriate extent of that protection where only a portion of the mortgagee's claim is so secured.

It is in this context that this Court evaluates the status of FMCC in this case. FMCC has been found to be only partially secured in the residential real estate of this debtor. Further, FMCC is to be paid its entire principal, as well as simple interest at 8% per annum, in a period of time approaching two years less than the original term of the obligation contracted by this debtor. In this Court's opinion, it would violate the spirit of the Chapter 13 law, as well as the legislative intent of Congress, to allow FMCC to veto confirmation of a Chapter 13 plan where, in the final analysis, it is receiving no less than the full benefit of its bargain as that benefit existed at the time of the filing of this Chapter 13 petition. It is well to remember that the assertion of the rights of a creditor in a bankruptcy case rests, under the Code, on the status of that creditor as the holder of a claim, either secured, unsecured, or both. To the extent that the creditor holds a secured claim, as FMCC does in this case, it is entitled (absent its consent otherwise) to have that claim fully paid. The present plan proposed by this debtor, consistent with § 1325(a)(5)(B)(ii) of the Code, so provides. It is a further finding of this Court that had a Chapter 7 case been initiated by this debtor, FMCC would have received less than the full principal amount currently owing on its loan. The debtor, by his plan, proposes to pay that full principal amount of FMCC's loan, with an appropriate discount factor added for the deferred payment schedule. Thus, in this Court's opinion, FMCC cannot assert that its rights are being modified as that term is used in § 1322(b)(2) of the Bankruptcy Code and as it is interpreted by this Court in the context of the presently proposed Chapter 13 plan. The term "modify" must be read in conjunction with the entire Chapter 13 statutory scheme, including the confirmation standards of § 1325. There is no modification where the secured creditor receives the full value of its secured claim as it existed at the date the petition was filed.

A narrow and restrictive interpretation of the scope of the provisions of § 1322(b)(2) and limitations on its use even in situations where it would seem to clearly apply is not novel. Thus, in *In re Baksa*, 5 B.R. 184, 6 B.C.D. 559 (N.D.Ohio 1980), Bankruptcy Judge White held ineffective a pre-petition waiver of security where the result of such waiver would call into play the provisions of § 1322(b)(2) and frustrate the ability of the debtor to propose a workable Chapter 13 plan. The remedial purpose of the Chapter 13 remedy, and the clear benefit to unsecured creditors in confirming the debtor's proposed plan, motivated Judge White to

bar the use of § 1322(b)(2) to the objecting creditor.

In the final analysis, this Court finds in this case that the provisions of § 1322(b)(2) of the Bankruptcy Code do not augment the rights of FMCC as a secured creditor, as those rights are embodied in § 1325(a)(5) of the Bankruptcy Code. The confirmation standards applicable in this case have thus been fully satisfied, and FMCC is being treated fairly and in concert with the protection afforded it by the statute.

Based upon the foregoing findings, the Court hereby determines that the objection to confirmation filed by Ford Motor Credit Company is without merit and it is hereby overruled. A confirmation order will issue forthwith.