In re George W. BRUCE, Sr., Celestine B. Bruce, Debtors.

CAMERON BROWN COMPANY and Financeamerica Mortgage Services Company, Movants,

v.

George Winslow BRUCE, Sr., et al., Respondents.

Bankruptcy No. 7–83–01283.

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

July 11, 1984.

Raymond R. Robrecht, Salem, Va., for debtor-respondents.

Ross C. Hart, Roanoke, Va., for movants.

Melba C. Pirkey, Roanoke, Va., Chapter 13 Trustee-Respondent.

## MEMORANDUM OPINION AND ORDER

H. CLYDE, PEARSON, Bankruptcy Judge.

Cameron Brown Company (CBC) and Financeamerica Mortgage Services Company (FMSC) jointly filed the within motion seeking relief from the stay of 11 U.S.C. § 362 and, further, objected to the Debtors' Chapter 13 Plan upon other grounds. Upon hearing of the motion for relief from the stay and confirmation of the Debtor's plan to provide adequate protection to the secured creditors, the court finds and concludes as follows:

The primary issue before the court, at the outset, is whether or not CBC and FMSC are secured and, if so, to what extent. CBC is secured upon a first Deed of Trust note, and FMSC is secured upon a second Deed of Trust note upon real estate which is the Debtors' residence. 11 U.S.C. § 362(g) places upon the creditor the burden of going forward with the proof of value and equity upon a motion for relief from the stay. The creditors presented evidence of a recent appraisal by one Clowers. The Clowers appraisal filed with the court asserts a value upon the residence of $40,000.00. A 1977 appraisal was presented; however, same was out of date and did not represent the present value as testified to by Clowers' current appraisal.

Virtually undisputed in the evidence is the debt of CBC, secured by the first Deed of Trust, representing a long-term real estate mortgage with a present balance, including arrearages, of $40,353.78. FMSC's second Deed of Trust note has a present balance of $8,245.26, with a payoff computation with rebate of interest of $9,623.44. The total of the two mortgages approximates $51,000.00.

The second Deed of Trust note represents an add-on interest loan obtained by the Debtors for the purpose of consolidating and paying several existing debts. The Debtors, at the time, were apparently unable to keep current payments thereon when Mr. Bruce was terminated from a well-paying position with the United States Postal Service. The amount financed of $10,741.94, together with 18% interest of $6,898.00, resulted in a total of $17,640.00. The payments were $245.00 per month over a 72 month period. The principal amount included credit life insurance of $966.67 for the six year life of the loan.

The evidence further reflects that the Debtors have income presently of approximately $1,458.00 per month. The husband's earnings are from two jobs, in which he earns $460.00 per month from one and $340.00 per month from the other, plus a Veterans Administration disability monthly income of $118.00, making a total of $978.00. Mrs. Bruce, from her employment, earns approximately $480.00 per month, making the total of approximately $1,458.00. The real estate in question is the sole principal residence of the Debtors in which they reside.

The Debtors' Plan provides for payments to both Deeds of Trust, a regular monthly payment plus a sum toward arrearages presently existing. This Plan is predicated upon the premise that both Deeds of Trust are secured and each must be accorded payments as secured claims under the Plan.

Counsel for the creditors contends that 11 U.S.C. § 1322(b)(2) prohibits modification of the first and second Deed of Trust claims as provided therein. This Section provides as follows:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> ...(2) *modify the rights of holders of secured claims,* other than a claim secured *only* by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims; ...

[emphasis added]

From the creditors' evidence, it is apparent that only the first Deed of Trust is secured and there is no equity in the real estate to support the second Deed of Trust of FMSC. In consideration of the issues presented, it is necessary for the court not only to consider § 1322, but, likewise, must consider 11 U.S.C. § 506(a), which provides as follows:

> "(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim *to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.* Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition *or use or on a plan* affecting such creditor's interest."

[emphasis added]

Several courts have had an opportunity to review the interworkings of §§ 1322 and 506. In the case of *In re Morphis,* 30 B.R. 589 (Bk.N.D.Ala.1983), at page 593, the court stated:

> ... "The last sentence in this Congressional report infers that the exception provided by § 1322(b)(2) for a claim secured by the debtor's principal residence

is the type of claim that may be treated with under § 1322(b)(5)—a long-term mortgage debt and not a short-term finance company 2nd or 3rd mortgage. In construing the exception provided in § 1322(b)(2) the Bankruptcy Court for the Northern District of Florida reached a similar conclusion. 'Although the legislative history is silent, the plain intent of the exception is to provide stability in the residential long-term home financing industry and market. It is to specifically protect institutional lenders engaged only in providing long-term home mortgage financing and not lenders primarily engaged in consumer or other areas of financing but who take security interests in a residence or homestead to secure non-home financing debts.' *United Companies Financial Corporation v. Brantley,* 6 B.R. 178, 189 (Bankr.N.D. Fla.1980). Contra, *In re Simpkins,* 16 B.R. 956, 972 (Bankr.E.D.Tenn.1982). Although the statute is not limited to lenders engaged only in home financing, it is intended to specifically apply to actual, long-term home financing loans, regardless of the lender. In applying the exception in § 1322(b)(2), the distinction is not based on the type of lenders but rather on the type of loan. This court believes that this exception is inapplicable to relatively short-term, non-home related loans secured only by a security interest in the debtor's principal residence. In the instant case, Transamerica's loan was relatively short term (60 months) with a high rate of interest (21% APR). Therefore, their claim does not fall within the exception provided in § 1322(b)(2) and is subject to repayment modification."

In the case of *In re Neal,* 10 B.R. 535 (Bankr.S.D.Ohio 1981), cited in *Morphis,* the Ohio court similarly had before it the construction of § 1322(b)(2) as it relates to § 506, in which the court stated, at page 536:

> "The legislative history on the enactment of this particular provision of the Bankruptcy Code [§ 1322(b)(2)] is sparse. Without explanation, the clause

relating to the inability of a Chapter 13 debtor to modify the rights of the holder of a claim secured only by a security interest in residential real estate was inserted during the process of legislative debate and compromise over the final version of the legislation. The insertion of this clause was, in the Court's opinion, premised in part on the assumption, not always valid, that a claim secured in real property was fully secured and thus deserved full payment at the agreed upon contract rate. There apparently was a fear on the part of the drafters of the legislation, perhaps imparted by that portion of the creditor community dealing with mortgages on residential real estate, of a wholesale revision of the repayment terms of home mortgages to the substantial financial detriment of the lending institutions. At least one court has presumed this to be the purpose of the clause. *See United Companies Financial Corporation v. Brantley,* 6 B.R. 178, 179 at 189 (N.D.Fla.1980). No clue is given as to why this added protection was merited by a lender who may have only taken real estate as security, as opposed to a lender who may have required additional security in the form of stock, accounts receivable, motor vehicles, or other personal property."

The court, specifically discussing Sections 1322(b)(2) and 506(a), stated further:

"The treatment proposed to be given to the second mortgagee in this case is further complicated by the fact that a portion of the claim of the second mortgagee is, in fact, unsecured. It is not consistent with the statutory scheme of Chapter 13, and the Bankruptcy Code's bifurcated treatment of a secured and unsecured claim, for instance, to assume that a junior mortgagee on real property which is already overburdened by senior mortgages, could insist on being treated as a creditor with a secured claim and insist on full payment of its claim based upon the pre-petition contractual arrangement with the debtor. It would appear that in that instance the Court would be constrained to find, pursuant to § 506(a) of the Bankruptcy Code, that the junior mortgagee was in fact the holder of an unsecured claim and thus unable to invoke the protection of § 1322(b)(2) and prevent confirmation of a Chapter 13 plan.

"To a lesser degree, that same problem exists in the present case. FMCC, as second mortgagee, is, at least partially, the holder of an unsecured claim. The best and only available evidence before the Court with respect to the valuation of the residential real estate of this debtor is the $25,000 valuation contained in the debtor's Chapter 13 Statement filed with the petition. Given the approximate $10,000 balance still owed on the first mortgage and an estimated cost of sale figure of ten percent of the gross selling price, it is this Court's finding that the $14,066 owed to FMCC would be at least partially unpaid if the residential real estate of this debtor were presently sold in a normal market setting. The Court hereby allows the claim of FMCC as a secured claim to the extent of $12,500 and as an unsecured claim for the balance owed. *See* 11 U.S.C. § 506(a). In a forced sale setting (either a state court foreclosure or a Chapter 7 liquidation), FMCC's secured claim would most likely be substantially smaller, and its unsecured claim correspondingly substantially larger."

The review of the legislative history as well as the foregoing decisions relating to the provisions of § 1322(b)(2) demonstrates a desire on the part of the Congress to retain first mortgage secured claims without material modification. This obviously is because first mortgage Deeds of Trust are long-term obligations placed upon residential real estate valued so as equity exists and the notes secured by mortgages or Deeds of Trust are adequately secured.

A review of § 506 further shows a desire on the part of Congress to make certain that creditors claiming to be secured, which, in fact, are not secured, should not enjoy a priority payment status over other unsecured creditors seeking payment of their claims in debtor proceedings. In this

case, the significance of § 506 is pronounced in that only the first Deed of Trust note is secured, and the second Deed of Trust note unsecured. To accord FMSC's claim a secured and priority payment status when, in fact, it is not secured in any respect, would unjustly prejudice other general unsecured creditors.

Counsel for the creditors further claims that, since no equity exists in the residential property to secure both the first and second Deed of Trust, relief from the stay of § 362(d) should be granted since adequate protection is unavailable. This contention misconstrues this provision. Section 362(d) provides as follows:

"(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the *lack of adequate protection* of an interest in property of such party in interest; or [emphasis added]

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; *and* [emphasis added]

(B) such property is not necessary to an effective reorganization."

It should be noted that the conjunction between (A) and (B) is "and", being conjunctive and not disjunctive "or". Therefore, not only must a lack of equity be found, but additionally, the property must be found not necessary to an effective reorganization. The primary residence of Chapter 13 debtors, as in this case, is necessary to provide a home pending resolution of the debtors' financial problems in the Chapter 13 case. Indeed, in most cases, the preservation of the residence from foreclosure is the primary reason for the filing of a Chapter 13 case.

In accordance with the foregoing, it is the conclusion of the court that the first mortgage of CBC is secured and entitled to treatment pursuant to § 1322(b)(2); that the claim of FMSC is an unsecured claim to be paid with other unsecured creditors;

and that inasmuch as the Debtors' Plan of Payment contemplates providing funds for both claims as secured claims, a modification of the Debtors' Plan is in order and leave is granted to the Debtors to file a modification within fifteen (15) days, with provisions as to payment of unsecured debts. As to the secured claim of CBC, adequate protection will be provided by the payment of the regular monthly payment commencing on the next regular date provided for in the Deed of Trust note, to-wit: August 1, 1984, and by payment of a sum over a reasonable period of time within which the arrearages shall be brought current. The Debtors' modified Plan shall make provision for the payment of such arrearages and the period of time within which said payments shall be made, which shall not exceed thirty-six (36) months unless a greater period is approved by the court, all of which is SO ORDERED.

Service of a copy of this Memorandum Opinion and Order shall be made by mail to the Debtor-Respondents, Debtors' Attorney, Trustee, and to counsel for Movants.