In re Cynthia Kay **SHAFFER**, Debtor.

**Bankruptcy No. 7–87–01561–BKC–HP2.**

United States Bankruptcy Court,
W.D. Virginia,
Abingdon Division.

March 15, 1988.

Barry L. Proctor, Abingdon, Va., for debtor.

Charles L. Moffatt, IV, Hamrick, Moffatt, Parker & Associates, Bristol, Tenn., John M. Lamie, Abingdon, Va., for Capitol Credit Plan of Tennessee, Inc.

Jo S. Widener, Bristol, Va., Trustee.

## MEMORANDUM OPINION

### H. CLYDE PEARSON, Chief Judge.

At issue before the Court is the confirmation of the debtor's Chapter 13 plan. Capitol Credit Plan of Tennessee, Inc., (Capitol) holder of the debtor's note secured by a second deed of trust on her residential property, has objected to confirmation of the Plan on the grounds that it impermissibly modifies their rights pursuant to 11 U.S.C. § 1322(b)(2).

A brief summary of the facts shows that the debtor, Cynthia Kay Shaffer, filed her Chapter 13 plan on September 4, 1987. She lists two secured debts, both secured by deeds of trust on her house and lot in Bristol, Virginia. The first deed of trust lien is held by the Farmers Home Administration (FmHA). The remaining balance on that debt totals $19,000.00 and calls for payments of $90.00 per month. Payments were up to date as of the date of the petition. The second deed of trust is held by Capitol, the objecting party herein. That debt totals approximately $9,000.00 and calls for installment payments of $225.00 per month, which were four months in arrears on the date of the petition.

In pertinent part, the debtor's plan proposes no changes in the repayment of the FmHA debt. The plan, however, seeks to alter the terms of the debt of Capitol. The plan calls for a monthly payment of $124.00 for ten 10 years at 11 percent interest, thus significantly altering the pre-petition contractual terms.

The issue thus presented is the construction and interpretation to be given 11 U.S. C. § 1322(b)(2). That provision states:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

The question, then, is whether the debt owed Capitol Credit falls within the protection of Section 1322(b)(2), such that the modification thereof as proposed by the debtor's plan is improper, precluding confirmation of the plan.

This is not a novel question of law. In fact, since the passage of the Bankruptcy Reform Act in 1978, two distinct lines of cases have evolved interpreting § 1322(b)(2). This dichotomy has been

caused in large part by an almost non-existent legislative history.

■ One line of cases has held that the purpose of Section 1322(b)(2) is to protect the long-term home mortgage industry. Junior liens are not thought to be protected.

> Although the legislative history is silent, the plain intent of the exception is to provide stability to the long-term home financing industry and market. It is to specifically protect institutional lenders engaged only in providing long-term home mortgage financing and not lenders primarily engaged in consumer or other areas of financing but who take security interests in a residence or homestead to secure non-home financing debts.

*United Companies, etc. v. Brantley,* 6 B.R. 178 (B.C.N.D.Fla., 1980).

Other analyses arriving at the same conclusion can be found in *In re Neal,* 10 B.R. 535 (B.C.S.D.Ohio 1981) and *In re Morphis,* 30 B.R. 589, 592 (B.C.N.D.Ala.1983). (Now the trend among nationwide finance companies is to take a mortgage *only* [emphasis in original] on the real property that is the debtor's principal residence in an attempt to come within the exception provided by Section 1322(b)(2) which would prevent the Chapter 13 Plan from modifying their rights. This Court believes that these short-term, non-home related, finance company loans are not within the Congressional intended scope of Section 1322(b)(2).) *See also, In re Lindamood,* 34 B.R. 330 (B.C.W.D.Va.1983), *In re Bruce,* 40 B.R. 884 (B.C.W.D.Va.1984).

Furthermore, this same school of thought soundly recognizes that Section 1322(b)(2) must be read in conjunction with 11 U.S.C. § 506(a),[1] i.e., only a claim that is actually secured by adequate unencumbered collateral can be eligible for the protection of Section 1322(b)(2).

The treatment proposed to be given to the second mortgagee in this case is further complicated by the fact that a portion of the claim of the second mortgagee is, in fact, unsecured. It is not consistent with the statutory scheme of Chapter 13, and the Bankruptcy Code's bifurcated treatment of a secured and unsecured claims, for instance, to assume that a junior mortgagee on real property which is already overburdened by senior mortgages, could insist on being treated as a creditor with a secured claim and insist on full payment of its claim based upon the pre-petition contractual arrangement with the debtor. It would appear that in that instance the Court would be constrained to find, pursuant to § 506(a) of the Bankruptcy Code, that the junior mortgagee was in fact the holder of an unsecured claim and thus unable to invoke the protection of § 1322(b)(2) and prevent confirmation of a Chapter 13 plan.

*In re Neal, supra* at 537.

The contrary line of cases interprets Section 1322(b)(2) in a more constrained light. These cases have held that a debt secured by *any* security interest in real property of the debtor that is the debtor's principal residence is protected from modification. The theory is apparently that any debt backed by a "security agreement" is therefore "secured," regardless of whether or not senior liens encumber the whole value of the collateral. In other words, these cases overlook the Code's distinction between secured and unsecured claims under Section 506(a).

---

1. "An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

The language of § 506 is long rooted in bankruptcy jurisprudence as its forerunner was § 57(h) of the Act of 1898 and had as its equitable basis the desire of courts to avoid favoring one unsecured creditor over another.

While courts have recognized the general applicability of 11 U.S.C. § 506 in bankruptcy cases, its applicability has been limited where more specific statutory provisions apply, or where such application is inconsistent with the policy of the Bankruptcy Code.

*In re Hynson,* 66 B.R. 246, 250 (B.C.D.N.J., 1986)

The concept that only a 'secured claim' and not an 'unsecured claim' of a mortgagee is protected within the ambit of 11 U.S.C. § 1322(b)(2), carries the syntax of the Bankruptcy Code to an absurd conclusion which is at odds with the general principles of statutory construction and with the clear legislative intent of 11 U.S.C. § 1322(b)(2).

*Id.* at 253. *See also, In re Hobaica,* 65 B.R. 693 (B.C.N.D.N.Y.1986); *In re Simpkins,* 16 B.R. 956, 966 (B.C.E.D.Tn.1982) (The special protection of § 1322(b)(2) was meant to protect holders of long-term home mortgages, rather than holders of short-term notes such as this. Nevertheless, the provision of § 1322(b)(2) is not so limited. The legislative history cannot amend the plain language of the statute.)

This court reaffirms its holdings in *Lindamood* and *Bruce, supra.* Though the legislative history of § 1322(b)(2) is inconclusive at best,[2] that does not mean that its intent cannot be deciphered from other evidence. Where the language of the statute is ambiguous or inconsistent and the legislative history offers little additional help, one other piece of evidence to be analyzed is the *effect* of the statute on specific factual situations.

Assume hypothetically that a debtor's residence is encumbered by a traditional, long-term purchase money mortgage or deed of trust. Assume further that the debtor borrows heavily against his home, obligating himself on four or five or six separate loans, each secured by such lien. It is hardly conceivable that Congress could have intended that Section 1322 protect subordinate fourth or fifth or sixth liens which in fact may totally lack equity security in the property. As the *Simpkins* court noted, *supra,* the obvious purpose of Section 1322(b)(2) is "to protect long-term home mortgages...." That plain intent is thwarted if the section is applied to second, third, fourth, fifth, sixth or more mortgages, whose burdens probably brought the debtor into this court in the first place. It could not be reasonably said that such unsecured creditors could occupy a favored position over other unsecured creditors in the Chapter 13 case. This analysis should not change even assuming, however remote the possibility, that the junior lien *is* fully secured.

In short, an analysis of all relevant factors can indeed "amend the plain language of the statute." *Simpkins, supra,* at 966.

"[A] thing may be within the letter of the statute, and yet not within the statute, because not within the spirit, nor within the intention of its makers."

*Church of the Holy Trinity v. U.S.,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892).

In the case of *Columbia Bank v. Lee,* 368 F.2d 934 (4 Cir.1966) *cert. den'd.,* 386 U.S. 992, 87 S.Ct. 1308, 18 L.Ed.2d 338 the court stated:

"The legislative purpose as revealed by the entire context must be considered."

One highly relevant factor necessary for an understanding of Section 1322(b)(2) is the overriding aim of Chapter 13 to rehabilitate a distressed debtor. In theory, an infinite number of creditors could take security interests in real estate that is the principal residence of the debtor. Giving these loans protected treatment would not

---

**2.** "Section 1322(b)(2) of HR 8200 simply provided that the plan may 'modify the rights of holders of secured claims or of holders of unsecured claims.' The Senate version of § 1322(b)(2) in § 2266 also included that the plan could 'modify the rights of holders of secured claims (other than claims wholly secured by mortgages on real property) or of holders of unsecured claims.' Editor's Comment, Norton Bankr. Code Pamphlet 1987–1988 Ed,–900. Thus, what legislative history does exist only provides further evidence that the final version of § 1322(b)(2) was intended to protect the long-term home mortgage industry. This court agrees with *Brantley, supra,* that the purpose of the subsection is abundantly clear.

only be contrary to the plain intent of Section 1322(b)(2) to protect long-term home mortgages, but it would be virtually impossible for a debtor to propose a plan of rehabilitation if all the debts were so protected.

 In the case at bar, the court finds that the deed of trust of Capitol is junior to the FmHA lien; that it secures a relatively short-term note (approximately 6 years) at a high rate of interest (19.42% A.P.R.). The debt appears to be exactly the type of consumer loan secured by a security interest in residential real estate that should be denied the protection of Section 1322(b)(2), *see Morphis, supra,* at 592, notwithstanding the fact that the value of the real estate may be high enough to make the debt fully secured. The proposed repayment plan and the allowance for arrearages shall be sufficient to constitute adequate protection of the debt owed Capitol Credit.

An appropriate order will enter and the Trustee shall submit an order of confirmation in accordance herewith.

The Clerk is directed to make service of a copy of this Memorandum Opinion to the Debtors; John M. Lamie, Esq., counsel for the Debtors; Barry L. Proctor, Esq., counsel for the Debtors; Jo S. Widener, Esq., Trustee; Charles L. Moffatt, IV, Esq.; U.S. Dept. of Agriculture, Farmers Home Administration; and U.S. Trustee.