In re James M. ROBERTS and Billie Jo Ann Roberts, his Wife, Debtors.

James R. ROBERTS and Billie Jo Ann Roberts, his Wife, Plaintiffs,

v.

Gary V. SKIBA, Esq., Trustee, and Miles Homes, a Division of Insilco Corp., Defendants.

Bankruptcy No. 87–00396E.

Adv. No. 87–151E.

United States Bankruptcy Court, W.D. Pennsylvania.

April 28, 1989.

Gary V. Skiba, Erie, Pa., Trustee.

James H. Richardson, Erie, Pa., for defendant, Miles Homes.

Joseph P. Burt, Erie, Pa., for debtors.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Issue

The question presented is whether the debtors may, under 11 U.S.C. § 1322(b)(2), modify a second lien mortgage on the debtors' residence which was incurred in order to acquire the residence and which has a life of three years-two months to full maturity and was past due prior to the filing of this bankruptcy case.

### Facts

The debtors in the within adversary proceeding, James M. and Billie Jo Ann Roberts, have brought the within adversary proceeding in order to determine the secured status of Miles Homes Division of Insilco ("Miles Homes"). On August 5, 1978, debtors executed an INSTALLMENT LAND PURCHASE AGREEMENT, which was recorded, under which they were purchasers of certain land, to be paid for in monthly payments. In July 1979, debtors executed an agreement with Miles Homes to purchase the materials necessary to construct a house on the lot which debtors were buying. The full balance of $24,099.92 was due and payable on September 2, 1982, a period of just over three years. During the term of the loan, the debtors were to pay interest only, with a balloon payment of the full balance due on September 2, 1982. Debtors did not make the payments contemplated and over the course of the years, since 1979, the debt has accumulated to approximately $60,000. The present value of the home constructed on the lot in question with the materials supplied by Miles Homes is approximately $30,000. The debtors seek to modify the Miles Homes' mortgage so that the principal will be reduced to $30,000, which will be paid pursuant to the debtors' Chapter 13 plan, over a five year period, in sixty payments of $639 per month, totalling $38,340.

## Discussion

The debtors argue that the agreement of Miles Homes to provide the materials in question, titled "Miles Homes' Lien Contract" was somehow insufficient consideration to support the mortgage which was simultaneously executed by the debtors in favor of Miles Homes on the lot which the debtors were purchasing, and which was recorded by Miles Homes with the Recorder of Deeds of Erie County, Pennsylvania. The materials provided were to be used and were used in the construction of a home on the land in question which was described in the mortgage.

Debtors argue that the mortgage given was not for the purchase of real estate, but was to further secure payment of the debt under the "lien contract" which provided for the purchase of the plans, materials and some subcontracting work for the construction of the home. Debtors also argue that Miles Homes is not a creditor whose only security is a mortgage on the principal residence, because it had a lien on the materials which went into the home; the debtors argue simultaneously that since no Uniform Commercial Code financing statement was filed relative to the materials, such lien was invalid, even though the materials have been incorporated into the home.

■ We think it elementary that the debt created by the purchase on credit of the materials for building the home, which were in fact incorporated into the home, constitutes a sufficient consideration for the execution of the mortgage on the same property.

■ Debtors also argue that a valid mortgage cannot be obtained by a mortgagee upon property in which the debtors-mortgagors only have an equitable interest. We also find that position to be without merit. *See, Appeal of Easton Borough,* 47 Pa. 255 (1864) (An equitable interest may be bound by a mortgage and the mortgage lien attaches to and binds the legal title the instant that it vests in the mortgagor.)

■ The real issue in this case is whether the debtors may (1) modify the $60,000 mortgage by reducing it to a secured claim of $30,000 and an unsecured claim of $30,000; (2) discharge the unsecured portion without payment under their Chapter 13 plan; and (3) pay off the $30,000 secured portion over a period of five years from the date of confirmation of the plan.

A significant number of cases have addressed this type of issue and have reached various results depending on the interpretation of 11 U.S.C. § 1322(b)(2). A succinct and thorough analysis of this issue was prepared for the 23rd annual seminar of the National Association of Chapter Thirteen Trustees by Harold Barkley, Jr. of Jackson, Mississippi and a substantial excerpt therefrom is set forth in the attached Appendix, incorporated herein by reference. H. Barkley, Jr., *A MEMORANDUM: THE SECOND AND OTHER JUNIOR MORTGAGES ON A DEBTOR'S RESIDENCE;* 2 NACTT Quarterly No. 1, at 11–14 (October 1988).

§ 1322(b)(2) provides that:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

The debtors argue that we should read that subsection to provide that:

"(b) The plan may—

... (2) modify the rights of holders of secured claims, other than a claim secured by a long-term residential mortgage ..."

The fourth line of cases addressed in the Appendix holds that the protection of § 1322(b)(2) is not available to a short term consumer type debt secured by a residential mortgage. Debtors would have us go further and deny the mortgage the protection of § 1322(b)(2) because it is short term, even though in the instant case, that mortgage enabled debtors to acquire the home. We think the legislative history

does not warrant debtors' proposed redraft of the statute by the court.

The debtor also argues that the mortgage should be modified under § 506(a) by dividing the claim into a secured portion and an unsecured portion. We are in accord with the rationale used by the majority of the courts as set forth in the first line of cases addressed in the Appendix and will follow *In re Hynson,* 66 B.R. 246 (Bkrtcy. D.N.J.1986) where the court rejected debtors' argument, stating that § 506 is a provision of general applicability, whereas § 1322 applies only and specifically in cases under Chapter 13 and § 1322 therefore controls. Thus, we hold that the debtor cannot modify or reduce the mortgage on his principal residence in his Chapter 13 plan.

### Conclusion

For the reasons stated, the complaint by the debtors to modify the mortgage of Miles Homes will be dismissed. A separate order shall be issued.

### APPENDIX A

### A MEMORANDUM: THE SECOND AND OTHER JUNIOR MORTGAGES ON A DEBTOR'S RESIDENCE

Since October 1, 1979, the effective date of the present Bankruptcy Code, much has been written regarding the treatment which must be accorded holders of secured claims which are secured only by a security interest in real property which is the debtor's residence. 11 U.S.C. § 1322(b)(2) provides in pertinent part:

(b) subject to subsection (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

This language has been interpreted by the majority of the courts to mean that any debt which is secured only by a security interest in real property that is the debtor's principal residence cannot be modified in a Chapter 13 plan. In reaching this conclusion, the courts have had to reconcile 11 U.S.C. § 1322(b)(2) with 11 U.S.C. § 506(a). *In re Hynson,* 66 B.R. 246 (Bkrtcy.D.N.J. 1986), a debtor filed a Chapter 13 plan which was designed to cure the arrearage owed on the first mortgage and make regular monthly payments to the holder of the first mortgage. The debtor contended that the amount owed on the first mortgage exceeded the value of the property. Therefore, she contended that the second mortgage was unsecured debt which could be modified under the plan. The debtor reasoned that since § 506 establishes the extent to which a claim is a secured claim for bankruptcy purposes and since whether a claim is secured is dependent upon the value of the collateral, then if there was no value in the collateral for the second mortgagee, the second mortgagee was unsecured. Therefore, § 1322(b)(2) was not applicable since the second mortgagee did not have a secured claim.

The Bankruptcy Court rejected this reasoning. It stated that § 506 is a provision of general applicability in cases under Chapter 7, 11 and 13 of the Bankruptcy Code. On the other hand, § 1322 applies only in cases under Chapter 13. The court concluded that it accepted the tenet of statutory construction which provides that regardless of the inclusiveness of the general language of a statute, it does not apply or prevail over matters specifically dealt with in another part of the same enactment. *In re Hynson* at 249. *See also In re Hobaica,* 65 B.R. 693 (Bkrtcy.N.D.N.Y.1986); *In re Simpkins,* 16 B.R. 956 (Bkrtcy.E.D.Tenn. 1982).

A second line of cases has chipped away at the sacred stature of home mortgages covered under § 1322(b)(2), using the theory that if any collateral other than the debtor's principal residence secures the loan, then that claim may be modified in a Chapter 13 plan. *In re Stiles,* 74 B.R. 708 (Bkrtcy.N.D.Ala.1987) (debts secured by security interest in debtor's credit life policy as well as debtor's residence could be modified in Chapter 13 plan); *In re Simpkins,* 16 B.R. 956 (Bkrtcy.E.D.[Tenn.]1982) (sec-

ond mortgage note secured by debtor's principal residence and security interest in motor home could be modified in Chapter 13 plan); *United Companies Financial Corp. v. Brantley*, 6 B.R. 178 (Bkrtcy.N.D. Fla.1980) (prohibition against modification of plan with respect to terms of mortgage was not applicable where the debt was secured by an assignment of life insurance policy as well as by the mortgage). In reaching the holding in the cases cited above, the courts relied upon the legislative history and intent of § 1322(b)(2), which they contend is designed to provide stability in the residential long term home financing industry and market.

It is to specifically protect institutional lenders engaged only in providing long term home mortgage financing and not lenders primarily engaged in consumer or other areas of financing, but who take security interest in a residence or homestead to secure non-home financing debts.

*United Companies Financial Corp. v. Brantley* at 189.

The legislative history behind § 1322 indicates that it was designed to protect the long term mortgage industry.

The plan must provide for the submission of all or such portion of the debtor's future earning or other future income to the supervision and control of the trustee as is necessary for the execution of the plan. The plan must also provide for the full payment of all priority claims, and, if the plan classifies claims, provide the same treatment for each claim within a particular class.

Subsection (b) lists the provisions the plan is permitted to contain. The plan may designate a class or classes of unsecured claims, other than priority claims, subject to the provisions of § 1122, relating to classification of claims. The plan may modify the rights of holders of secured claims or of holders of unsecured claims. It may provide for the curing or waiving of any default. The plan may provide for payments on unsecured claims to be made concurrently with payments on secured claims or priority claims (which are unsecured claims.)

Paragraph (5) concerns long-term debt, such as mortgage debt. It permits the plan to provide for the curing any default within a reasonable time, and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the plan is due. Paragraph (6) permits payment of postpetition claims, as allowed under § 1305.

1978 U.S.Code Cong. & Admin.News, 5963, 6384.

A third line of cases allows modification of a second mortgage secured only by a principal residence by contrasting § 1322 with § 506. In *In re Bruce*, 40 B.R. 884 (Bkrtcy.W.D.Va.1984), the first deed of trust upon the debtor's principal residence exceeded the value of the property. There was no equity left in the property for the holder of the second deed of trust. The court reasoned that it was necessary not only to consider § 1322 but § 506(a), which provides:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under § 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The court, relying on *In re Morphis*, 30 B.R. 589 (Bkrtcy.N.D.Ala.1983), and *In re Neal*, 10 B.R. 535 (Bkrtcy.S.D.Ohio 1981), reasoned that § 506 must be looked to first in order to determine whether a claim was in fact secured. If the claim was not secured under 506, then the creditor was not entitled to the protection of § 1322(b)(2). The court opined that a review of 506 indi-

cated a desire on the part of Congress to make certain that creditors claiming to be secured, which in fact, are not secured, should not enjoy a priority payment status over other unsecured creditors. *In re Bruce* at 887. The court held that since there was no equity in the property for the benefit of the holder of the second deed of trust, that creditor was unsecured and must be paid similarly to other unsecured creditors.

It is important to note that the reasoning in this third line of cases closely approximates the reasoning applied to the first line of cases discussed herein. The first line of cases adopts the theory that § 506 is a statute of general application and § 1322 is one of specific application; therefore, the statute of specific application governs. The third line of cases suggests that § 506 is a definitional statute. Therefore, prior to looking to § 1322, one must determine what is a secured claim. If the claim is not secured within the definition of § 506, then it cannot be secured in accordance with § 1322.

The second and third line of cases have culminated in a fourth theory concerning second mortgages. *In re Shaffer*, 84 B.R. 63 (Bkrtcy.W.D.Va.1988), is the standard bearer of this school of thought. It is important to note that prior to entering *Shaffer*, the courts circumvented the mandates of § 1322(b)(2) by using such theories as not totally secured by the principal residence, partially secured by the residence or totally unsecured. *In re Shaffer*, however, does not reach for these straws. *In re Shaffer* specifically holds that short term consumer loan type debts secured by security interest in the principal residence are not entitled to the protection of § 1322(b)(2), notwithstanding the fact that the value of the real estate may be high enough to make the debt fully secured. *In re Shaffer* at 67. In reaching this conclusion, the court relies upon previous decisions in *United Companies Financial Corp. v. Brantley, supra, In re Neal, supra, In re Morphis, supra,* and *In re Bruce, supra.*

This is the first case which clearly holds that the protections of § 1322(b)(2) apply only to long term mortgages, not to consumer oriented loans which are made to secure non-home financing debts. *In re Shaffer* relies upon the limited legislative history which reflects a congressional intent not to place short term, non-home related finance companies within the scope of § 1322(b)(2). While the court in *[In] re Shaffer* agrees with the reasoning of the cases which state that § 1322 must be read in conjunction with § 506 to reach a conclusion that only claims actually secured by adequate unencumbered collateral can be eligible for protection under § 1322(b)(2), it goes further to say that even if there is adequate equity to totally secure a second mortgage which is short term financing, that indebtedness may still be modified in a Chapter 13 plan. *In re Shaffer* at 67.

Authority for the court's position in *In re Shaffer* can be found in *Grubbs v. Houston First American Savings Ass'n.*, 730 F.2d 236, 242–43 (5th Cir.1984). In *Grubbs,* in discussing § 1322, the court stated that the provisions of § 1322 concern long term debt. While the *Grubbs* court comes nowhere near holding that short term mortgages are not entitled to the protection of § 1322(b)(2), it does indicate that the Fifth Circuit views the legislative history behind this section as evidencing a clear intent that long term financing is the sacred cow, with there being no reference to short term financing.

*Shaffer* takes the 1322 modification a step further. The court confirmed a plan which modified a second deed of trust secured only by the debtor's principal residence as follows:

Original contract—6 yrs. $ $225.00 per mo., with 6 yrs. remaining, 19.42% A.P.R.;

Modification—10 yrs. $ $124.00 per mo., 11% A.P.R.

The court does not cite any specific authority for extending the payments beyond the five year limitation of § 1322(c). However, the court clearly has the power to modify contracts. *In re Reeves,* 65 B.R. 898 (Bkrtcy.N.D.Ill.1986) [ (N.D.Ill.1986) ]; *In re Ramirez,* 62 B.R. 668 (Bkrtcy.S.

C.[D.]Cal.1986). Once a modified contract's payments extend beyond the date the last payment of the plan is due, the debt has become the type which may continue to be paid after the plan is consummated. Bankruptcy Law and Practice, § 19.18 pp. 233–38 (West 1987 ed.). Of course, the debt is not discharged since payments extend beyond the life of the plan. See 11 U.S.C. § 1328.

\* \* \* \* \* \*

(*In re Shaffer, supra;* was affirmed by the U.S. District Court in part and remanded in part. The District Court's Opinion of July 6, 1988 affirmed the Bankruptcy Court's holding that 11 U.S.C. § 1322(b)(2) does not protect short term consumer non-home financing debts secured by a security interest in the debtor's principal residence. The District Court remanded for decision the two objections of the creditor to confirmation of the plan; the plan does not comply with 11 U.S.C. § 1325(a)(5) and 11 U.S.C. § 1322(c). There were no findings by the Bankruptcy Court on the two issues remanded. The creditor has appealed the District Court decision to the Fourth Circuit Court of Appeals.)

H. BARKLEY, JR., *A MEMORANDUM: THE SECOND AND OTHER JUNIOR MORTGAGES ON A DEBTOR'S RESIDENCE;* 2 NACTT Quarterly No. 1, at 11–14 (October 1988).