**TRANSOUTH FINANCIAL CORPORATION,**
Appellant,

v.

**Dale HILL and Deborah Hill,**
Appellees.

**No. 89–1049.**

United States District Court,
W.D. Tennessee, E.D.

July 20, 1989.

James D. Senter, III, Humboldt, Tenn., for Transouth Financial Corp.

Lloyd Utley, Jackson, Tenn., for Dale Hill and Deborah Hill.

## ORDER AFFIRMING DECISION OF BANKRUPTCY COURT

TODD, District Judge.

On December 1, 1988, the Bankruptcy Court, Judge Kennedy presiding, overruled creditor Transouth Financial Corporation's objection to debtors Dale and Deborah Hill's chapter 13 plan. Transouth Financial appealed the decision to this court. After considering the briefs of the parties, the transcript and record of the case below, and the applicable law, the court concludes that the decision of the bankruptcy court should be affirmed.

Transouth Financial holds a second mortgage on the debtors' residence for a debt consolidation loan, the terms of which the debtors attempted to modify in their reorganization plan. Transouth challenged the changes, claiming that the contract was exempt from modification under 11 U.S.C. § 1322(b)(2) as a loan secured only by real property that is the debtors' principal residence. Judge Kennedy found that the loan made by Transouth to the debtors was secured not only by the real estate, but also by credit life and credit disability insurance written in connection with the loan; therefore, the terms of the loan agreement were subject to modification. In addition, Judge Kennedy held that § 1322(b)(2) was intended to protect lenders of long-term purchase money loans, as opposed to short-term home equity lenders such as Transouth.

The findings of fact of a bankruptcy court will not be set aside by the district court unless they are clearly erroneous. *In re Edward M. Johnson & Assocs.*, 845 F.2d 1395, 1400 (6th Cir.1988). Under the "clearly erroneous" standard, factual inferences will not be overturned so long as they are reasonable and supported by the evidence. *In re Southern Indus. Banking Corp.*, 809 F.2d 329, 331 (6th Cir.1987). Interpretations of law are not so restricted, however, and are reviewed *de novo*. In this case, whether Transouth's loan was secured by other collateral in addition to real estate that is the debtors' principal residence is a factual matter that will be reviewed under the clearly erroneous stan-

dard. The bankruptcy court's holding concerning the intention and scope of 11 U.S.C. § 1322(b)(2) is a conclusion of law which requires *de novo* review.

11 U.S.C. § 1322(b)(2) provides that the reorganization plan of a debtor under chapter 13 may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." The courts have adopted two lines of thinking in interpreting this statute. *See generally In re Shaffer*, 84 B.R. 63 (Bankr.W. D.Va.1988). Some courts hold that the plain language of the statute means that *any* lender whose only collateral is the principal residence, whether it is the purchase money lender or a subsequent mortgagee, is entitled to the protection of the statute, and the contract cannot be modified. *See In re Bradshaw*, 56 B.R. 742 (S.D.Ohio 1985); *In re Simpkins*, 16 B.R. 956 (Bankr.E.D.Tenn.1982). In the opposite vein are the courts, such as the bankruptcy court below, that believe the legislative history and the underlying purpose of chapter 13 indicate that the § 1322(b)(2) exception operates to stabilize the outlook for primary long-term lenders but that it does not apply to shorter-term junior lienors. *See In re Jakes*, 99 B.R. 393 (Bankr. M.D.Tenn.1989); *In re Shaffer*, 84 B.R. at 67. This court declines to enter the fray on this issue. Because the non-application of § 1322(b)(2) in this case can be decided on the facts, there is no need for this court to reach the question of whether the statute excludes lienholders on the basis of loan length or lien status.

Turning to the question of whether Transouth comes within the protection of § 1322(b)(2) as one whose claim is secured only by a security interest in real property, the following facts were stipulated by the parties at the bankruptcy hearings below. The debtors executed a promissory note on May 19, 1987 in the original amount of $5,373.78 to Transouth Financial Corporation, to be repaid in four years with monthly payments of $162.00 and at an interest rate of 17%. As collateral, Transouth took a second mortgage on the debtors' home.

According to the figures submitted by the parties, the value of the property fully secures the both the original mortgage and the Transouth loan.

Included in the amount of the Transouth loan were premiums for credit life insurance and credit disability insurance, which the debtors had elected by signing in the appropriate space on the loan contract. The credit insurance was optional with the debtors, and the loan agreement clearly states that the insurance is not required in order to receive the loan. The contract did require the debtors to have property insurance on the collateral.

After the section on insurance, the loan agreement states:

> SECURITY: To protect us if you don't repay your loan, you grant us a security interest in the collateral checked below. In addition, you assign to us any proceeds which may become payable through insurance on the property or written in connection with this loan. This includes unearned or return premiums.

Below, a box is marked designating as collateral the deed of trust on the debtors' home in Saltillo, Tennessee. The bankruptcy court ruled in light of these provisions that the loan was not secured only by real property, but that the optional credit life and disability insurance was additional security for the loan. That decision is not clearly erroneous.

At least two other bankruptcy courts have come to the same conclusion when deciding this exact issue. In *In re Wilson*, 91 B.R. 74 (Bankr.W.D.Mo.1988), the court was confronted with a security provision very similar to the clause in the Transouth loan agreement. The promissory note in the *Wilson* case provided: "SECURITY. You may use any benefits (including premium refunds on purchased insurance) from insurance purchased or required under this loan to pay amounts I owe." *Id.* at 76. The debtors had purchased credit life and disability insurance in connection with their note, and they were required by their deed of trust to have property insurance. Although the lender claimed to hold a securi-

ty interest only in the debtors' residence thereby coming within the protection of 11 U.S.C. § 1322(b)(2), the court ruled that the lender took a security interest in all three of the debtors' insurance coverages through the above-quoted clause. *Id.* Thus, § 1322(b)(2) did not apply, and the debtors' modification was allowable. *Id.*

Likewise, the debtors' assignment of insurance proceeds as collateral was fatal to the lender's claim of § 1322(b)(2) protection in *United Companies Fin. Corp. v. Brantley,* 6 B.R. 178 (Bankr.N.D.Fla.1980). There, the debtor executed a separate document entitled "Assigment of Life Insurance Policy as Collateral." *Id.* at 189–90. The court ruled that under the circumstances, the exception to § 1322(b)(2) was "manifestly inapplicable." *Id.* at 190.

Transouth contends that its situation can be distinguished from the above cases because the insurance in this case was entirely optional. They claim that the insurance is wholly for the benefit of the debtors and provides no extra security for Transouth, especially when the loan amount already is fully secured by the property.

The court finds that the *Wilson* and *Brantley* cases cannot be distinguished on the basis that the insurance in those cases was required, where that fact is not at all clear in either of those cases. *See Wilson,* 91 B.R. at 76; *Brantley,* 6 B.R. at 189–90. Also, although the fact that the Hills' debt was already fully secured by the real estate may indicate that additional security was not necessary, it does not affect the reality that, by the language of this contract, Transouth took additional security in the debtors' credit insurance proceeds and refunded premiums.

Transouth also alleges that the credit insurance should not be considered additional security for the creditor because such coverage is entirely illusory and contingent. Transouth points out that should the debtors default before an insured event occurs, the credit insurance provides the lender no additional security. This argument is answered in *In re Stiles,* 74 B.R. 708 (Bankr.N.D.Ala.1987).

The present court, however, takes no issue with the general proposition that worthless collateral does not defeat a creditor's invocation of the protection afforded to certain creditors under the provisions of section 1322(b)(2). This section has a "legislative history" which states its raison d'etre, but that appears irrelevant to the present matter. Here, the creditor has a security interest in the life insurance as well as in the debtors' residence and the prohibition contained in section 1322(b)(2) does not prevent modification of [the creditor's] claim. Its argument that the life insurance is of no value to it as long as the insured is alive is specious, being defeated by its own conduct in accepting it as collateral. *Id.* at 710.

According to the above analysis, this court finds reasonable support for the bankruptcy court's ruling in this case that the optional credit life and disability insurance is additional security for the loan from Transouth, and therefore the loan was not "a claim secured only by a security interest in real property ..." under 11 U.S.C. § 1322(b)(2). Thus, the bankruptcy court's decision is not clearly erroneous and is AFFIRMED.

IT IS SO ORDERED.