### In the Matter of Nilda Rivera MARRERO & Julio Corsino, Debtors.

### Bankruptcy No. 87–2474/2475(SEK).

United States Bankruptcy Court,
D. Puerto Rico.

Jan. 18, 1990.

---

Irving K. Hernández, Río Piedras, P.R., for debtors.

Wallace Vázquez Sanabria, Hato Rey, P.R., for creditor Victor Adorno.

## OPINION AND ORDER

SARA E. DE JESUS, Bankruptcy Judge.

During the hearing on confirmation the Debtors and Mr. Adorno agreed there is no controversy as to the following facts, and asked the Court to solve the controversy without an evidentiary hearing. Accordingly, we now enter the following

## FINDINGS OF FACT

1. On June 28, 1985 Nilda Rivera Marrero executed a promissory note for the principal sum of $5,000.00 plus interest at 13% and $500.00 for any costs and attorneys fees which might be incurred by the mortgage creditors, payable to the bearer on June 28, 1986.

2. Payment of the principal, interest until the maximum amount permitted by the Usury Laws of Puerto Rico [1] and the sum of $500.00 for cost, etc., were secured by a second mortgage encumbering the following realty described in the Spanish language as:

"URBANA: Solar radicado en la Urbanización Quintas de Dorado, situado en el Barrio Higuillar de Dorado, Puerto Rico, que se describe en el plano de inscripción de dicha Urbanización con el número Doce del Bloque "I" (12–I). Area del solar: Cuatrocientos seteintiun metros cuadrados con veinticinco centímetros de otro (471.25 M.C.) En lindes: por el Norte en 25.00 metros con solar número Once del Bloque I; por el Sur, en 25.00 metros con el solar número 12 del Bloque I; por el Este en 18.85 metros con solar 28 del Bloque I, y por el Oeste en 18.85 metros con Avenida Boulevard Sur. Sobre este solar enclava una casa de concreto reforzado destinado a vivienda para una familia."

Inscrita la finca al folio 20 del tomo 137 de Dorado, Registro de la Propiedad de P.R., Sección 2da. de Bayamón, finca número 6,472 inscripción primera.

3. On June 29, 1987 the District Court of Puerto Rico, San Juan Part, entered a Judgment by Default against Debtors, ordering them to pay Mr. Adorno: the principal sum of $5,000.00, interest of $433.60 from October 1986 to the date of entry of Judgment, $500.00 for costs and attorney's fees and the legal interest from the date the Judgment was entered to total payment of the debt.

4. On October 27, 1987 Mrs. Rivera Marrero filed this Chapter 13 petition for bankruptcy.

5. Her case was consolidated with that of Mr. Julio Corsino, as per Order entered on November 7, 1987.

6. Debtors scheduled real property, with a physical address of I–12, Quintas de Dorado, Dorado, Puerto Rico, encumbered by two mortgages in favor of Caguas Federal Savings Bank and Mr. Víctor Adorno. They value the realty at $60,000.00.

7. Mr. Jaime Isern, a Court appointed appraiser, found the realty has a market value of $60,000.00.

8. On August 18, 1988, Debtors filed an "Amended Proposed Chapter 13 Plan" (the

---

1. The certificate submitted by the Registrar on March 17, 1988 in its second inscription registering the second mortgage, reads as follows: "Hipoteca en Garantía al Portador. Principal: $5,000.00[,] intereses: 13% anual. Se advierte a posteriores adquirentes del credito hipotecario que de los intereses pactados violar el Artículo 1649 CCPR quedará sujeta a las penalidades que surjan del Artículo 1652 CCPR. Se inscribe únicamente en cuanto al interés máximo que le sea dable al acreedor recobrar bajo la Legislación sobre usura."

plan).[2] The plan calls for 22 monthly consecutive payments of $100.00 each and 38 consecutive monthly payments of $300.00 each, for a base of $13,600.00. It orders the Trustee to pay ... "arrears to the second mortgage holder up to the amount of $6,583.00. Current payments to other secured creditors to be made directly by the debtors outside the plan."

9. Mr. Adorno objected to the confirmation of the plan because the sums secured by the second mortgage were due and payable, could not be varied by the plan and the Debtors have not provided any adequate protection for payment of the interest.

10. Debtors argue the 11 U.S.C. Section 1322(b)(2) allows them to modify the rights of the holder of the second mortgage in accordance with the plan they have proposed, and therefore, the Court must enter the order of confirmation.

## ISSUES

I. Whether a Chapter 13 plan may modify the rights of a creditor holding a fully secured interest encumbering a debtor's residence when the underlying indebtedness arose out of a short-term non-purchase money loan?

II. Whether the interest charged in said note is usurious in accordance with the prevailing interest rate at the time the note was executed?

## CONCLUSIONS OF LAW

### I.

Bankruptcy Code Section 1322(b)(2) provides:

"(b) subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secures by a security interest in real property that is the debtor's principal residence ...".

When asked to construe a statute, the Court's starting point is the language of the statute itself. *Blue Chip Stamps v. Manor Drug Store*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539, reh'g. denied, 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975); *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981).

"While the 'plain meaning' of the statute generally evidences Congressional intent behind its enactment, *Watt v. Alaska*, 451 U.S. 259, 266 n. 9, 101 S.Ct. 1673, 1678 n. 9, 68 L.Ed.2d 80 (1981), a court is not precluded from considering other 'persuasive evidence if it exists.' *Boston Sand & Gravel Co. v. United States*, 278 U.S. 41, 48, 49 S.Ct. 52, 54, 73 L.Ed. 170 (1928) (Holmes, J.). The fact that certain words are not to be taken literally may be evidenced by the circumstances surrounding congressional enactment. *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 514, 36 L.Ed. 226 (1892)." [3]

The Court is aware of a line of cases which hold that Code Section 1322(b)(2) was intended by Congress only to apply to long term, purchase money mortgages on debtor's residence. *In re Morphis*, 30 B.R. 589 (Bkrtcy.N.D.Ala., 1983); *In re Bruce*, 40 B.R. 884 (Bkrtcy.W.D.Va., 1984); *In re Paige*, 13 B.R. 713 (Bkrtcy.S.D.Ohio, 1981); *United Companies Financial Corp. v. Brantley*, 6 B.R. 178 (Bkrtcy.N.D.Fla., 1980).[4] But there is also a line of cases which strictly construes the cited Section of the Bankruptcy Code. See *In re Brad-*

---

2. This document is a second amended Chapter 13 Plan.

3. *In re Hobaica*, 65 B.R. 693, 695 (Bkrtcy.N.D. N.Y., 1986).

4. Some cases have also found that when the value of realty is insufficient to cover payment of its encumbrances consisting of a first and second mortgage on debtor's residence, the security interest consisting of a second mortgage becomes unsecured. Since the Code allows a plan to modify unsecured interests, the second

mortgage under the circumstances mentioned above, can be altered despite 11 U.S.C. 1322(b)(2). *In re Spadel*, 28 B.R. 537 (Bkrtcy.E. D.Pa., 1983); *In re Bruce*, 40 B.R. 884 (Bkrtcy. W.D.Va., 1984); *In re Neal*, 10 B.R. 535 (Bkrtcy. S.D.Ohio, 1981); but see also, *In re Hynson*, 66 B.R. 246 (Bkrtcy.N.J., 1986). This line of cases are not applicable at the facts at Bar since the value of Debtor's residence encumbered by Mr. Adorno's second mortgage, is sufficient to cover payment of both the first and second mortgage. We are also aware of those cases which hold

*shaw,* 56 B.R. 742 (S.D.Ohio, 1985); *In re Coffey,* 52 B.R. 54 (Bkrtcy.N.H., 1985); *In re Hubbard,* 30 B.R. 39 (Bkrtcy.W.D.Mo., 1983); *In re Simpkins,* 16 B.R. 956 (Bkrtcy.Tenn., 1982).

Most Courts would agree that the legislative history dealing with this Section of the Code is scarce. *In re Hobaica,* at 695; *In re Taddeo,* 685 F.2d 24, 26–28 (2nd Cir., 1982). Under these circumstances, we agree with the Bankruptcy Court in the case of *In re Hobaica,* at p. 695–696, when it states:

> "The Court hesitates to utilize sketchy history as a justification for ignoring the plain statutory language. Manipulation of unambiguous legislation phraseology, and reliance upon rules of statutory construction should be constrained to those instances where express Congressional purpose would be frustrated by a court's unwavering fixation on the printed word."

Therefore, pursuant to the facts presented in this case, together with our reading of the Bankruptcy Code's Section 1322(b)(2), Mr. Adorno's secured interest may not be modified and his objection to the confirmation of the Plan is sustained.[5]

## II.

The Registrar's Certificate (See Fact No. 2) raises the question of whether the interest charged by Mr. Adorno as per promissory note submitted is usurious. On March 29, 1989, the parties were ordered to review the issue on the light of the prevailing interest rate at the time the note was executed, as published by the Commissioner of Banking Institution of the Commonwealth of Puerto Rico, which appears to supersedes Article 1649 of our Civil Code, 31 Laws of P.R.Ann., Section 4591. The Debt-

or filed on September 1, 1989 a Certificate issued by said Commissioner which shows that the maximum interest that could be charged as of September 19, 1985 on conventional mortgage loans guaranteed by second mortgages was 12⅞% per year. However, this Certificate is irrelevant because the note in question was executed on June 28, 1985.

WHEREFORE, the Court cannot resolve the issue of usurious interest. Debtor is hereby ordered to obtain a correct certificate from said Commissioner and an opinion thru a "Carta Circular" which would determine whether Article 1649 of the Civil Code of P.R. or a Regulation fixing the maximum interest approved by said Commissioner should be applied to determine the maximum interest which Mr. Adorno could charge in this case. This will be submitted within 60 days.

---

"that Section 1322(b) ... [does not bar a Chapter 13 plan from] (a) ... curing a pre-petition acceleration into maturity of the unpaid installments due upon his home mortgage, or (b) from proposing (in his Chapter 13 plan for consideration by the bankruptcy court) that all past due or matured amounts secured by his home mortgage be paid during the terms of this plan, if approved by the court—so that, thereby, proceedings upon foreclosure of his home mortgage may be properly stayed, while permitting the debtor to pay off his arrearages in accordance with the terms of a plan confirmed by the

court." *Grubbs v. Houston First American Sav. Ass'n.,* 730 F.2d 236 (5th Cir., 1984). The facts presented are materially different with those of the *Grubbs* case.

**5.** Furthermore, as in this case, when the term of the note expires before the Chapter 13 petition is filed, Section 1322 is not applicable because there is no default to be cured nor any maintenance payment to be made. *In re McSorley,* 24 B.R. 795 (Bkrtcy.N.J., 1982).